C & L Rural Electric Cooperative Corporation *v.*
Kincaid.

4-9858                                        256 S. W. 2d 337

Opinion delivered January 12, 1953.

Rehearing denied April 20, 1953.

*T. S. Lovett, Jr.,* and *Rose, Meek, House, Barrow & Nash,* for appellant.

*V..J. Brocato* and *Brockman & Brockman,* for appellee.

J. Seaborn Holt, J. Appellants, corporations operating in this State, sued appellees on an indemnity contract. Appellees filed a demurrer to the complaint and also a motion to dismiss, both of which were sustained by the trial court. Appellants elected to stand on the complaint, prayed, and were granted an appeal.

The complaint filed June 21, 1950, alleged, in effect, that their cause of action grew out of business transacted by appellees in this State; that prior to February, 1947, appellant, C & L Rural Electric Cooperative Corporation, owned and operated transmission lines going through several counties of this State, most of which had been constructed for it by appellees, Delta Construction Co.; that in February, 1947, C & L made a contract with appellees, under the terms of which appellees agreed to furnish all material and labor necessary to construct some 700 additional miles of electric transmission wires in this State to tie in with said plaintiffs' existing system.

It was provided in Article IV, section 1 of the contract: "Section 1.—PROTECTION TO PERSONS AND PROPERTY. The Contractor shall at all times take all reasonable precautions for the safety of employees on the work and of the public, and shall comply with all applicable provisions of Federal, State, and Municipal safety laws and building and construction codes. All machinery and equipment and other physical hazards

shall be guarded in accordance with the 'Manual of Accident Prevention in Construction' of the Associated General Contractors of America unless such instructions are incompatible with Federal, State, or Municipal laws or regulations.

"The following provisions shall not limit the generality of the above requirements: (a) The Contractor shall at no time and under no circumstances cause or permit any employee of the Contractor to perform any work upon energized lines, or upon poles carrying energized lines. * * * (g) The Project, from the commencement of work to completion, or to such earlier date or dates when the Owner may take possession and control in whole or in part as hereinafter provided shall be under the charge and control of the Contractor and during such period of control by the Contractor all risks in connection with the construction of the Project and the materials to be used therein shall be borne by the Contractor. The Contractor shall make good and fully repair all injuries and damages to the Project or any portion thereof under the control of the Contractor by reason of any act of God or other casualty or cause whether or not the same shall have occurred by reason of the Contractor's negligence. The Contractor shall hold the Owner harmless from any and all claims for injuries to persons or for damage to property happening by reason of any negligence on the part of the Contractor or any of the Contractor's agents or employees during the control by the Contractor of the Project or any part thereof."

It was further alleged that on June 19, 1947, appellees had in their employ and control Grady L. McEntire, who, while performing certain work on an energized pole under the directions and orders of appellees' superintendent, Strode, came in contact with a live wire and was seriously and permanently injured; that thereafter on February 9, 1948, McEntire sued appellant, C & L Rural Electric Cooperative Corporation and others, not including appellees.

A trial resulted in a judgment against C & L for $40,000 damages and that on appeal to this court, the judgment was affirmed December 19, 1949, *(C & L Rural Electric Cooperative Corporation* v. *McEntire,* 216 Ark. 276, 225 S. W. 2d 941), that notice of the pendency of the McEntire suit was duly given to Delta Construction, appellees, but they refused to defend said suit.

Appellants further alleged that at the time McEntire received his injury, appellant, Employer's Mutual Liability Insurance Company of Wisconsin, had issued to appellant, C & L, its liability policy, under the terms of which it had agreed to pay all sums up to $25,000 which C & L might be required to pay McEntire, cost of any litigation, and that in the event of payment by the Insurance Company under the policy, said Company should be subrogated to all of the insured's (C & L's) rights under the policy. It was further alleged that appellant, Insurance Company, has duly performed its obligation under the policy; that on February 13, 1950, C & L paid on the McEntire judgment $10,742.99, appellant, Insurance Company, paid $26,858.33, and the balance of the judgment was paid by the American Casualty Company, the insurance carrier of co-defendants, Dickinson & White, in the McEntire suit above; that ''by reason of Article IV, section 1, of the contract of construction hereinbefore referred to, defendants (appellees) assumed all risks in connection with the construction of the project, so that by virtue of said assumption of risk the defendants have become liable to the plaintiff, C & L Rural Electric Cooperative Corporation, and to the plaintiff, Employer's Mutual Liability Insurance Company of Wisconsin, as its subrogee for their disbursements in connection with the said McEntire case.

''13. The defendants (appellees) were negligent in failing to use ordinary care to furnish their employee, the said McEntire, a safe place to work, in failing to warn and advise the said McEntire that said Pole 249 carried energized wires, and in failing to advise the plaintiff, C & L Rural Electric Cooperative Corporation, that they proposed to work on said pole at said time, and

the injuries sustained by the said McEntire proximately resulted from negligence on the part of defendants. By reason of Article IV, section 1, of said contract of construction, defendants are liable to indemnify the plaintiff, C & L Rural Electric Cooperative Corporation, and the plaintiff, Employer's Mutual Liability Insurance Company of Wisconsin, as its subrogee, for their disbursements and expenses in said McEntire case, inasmuch·as said Article provided that Delta should hold C & L Rural Electric Cooperative Corporation harmless for any and all claims for injuries to persons happening by reason of any negligence on the part of Delta Construction Company or its agents or employees during the control of said construction company of the Project or any part thereof. At the time of the accident to the said McEntire defendants were in control of the Project. . . . C & L Rural Electric Cooperative Corporation prays judgment against the defendants for the sum of $10,742.99, and plaintiff, Employer's Mutual Liability Insurance Company of Wisconsin, as subrogee, prays judgment against defendants for the sum of $28,-475.47, and for all proper relief.''

Appellees' demurrer filed July 12, 1950, alleged misjoinder of parties, plaintiff, and that a cause of action. was not stated. Their motion to dismiss filed September 10, 1950, alleged, in effect, that (1) The Circuit Court had no jurisdiction because the Arkansas Workmen's Compensation Commission had sole jurisdiction to hear and determine the matters alleged in the complaint. (2) C & L had no cause of action which it could subrogate to its co-plaintiff. (3) The contract of indemnity sued upon does not indemnify against C & L's negligence and the complaint avers facts and circumstances from which it appears that both C & L and Delta were guilty of negligence. (4) The plaintiffs may not now sue Delta directly because they failed to bring Delta in as a joint tortfeasor in the original suit between C & L and McEntire.

We hold that the complaint stated a cause of action and that the court erred in holding otherwise.

The present suit is one on an indemnity contract and is not an action in tort, as we shall point out.

Appellees earnestly contend that all issues raised in appellants' complaint have been adjudicated in the original McEntire case adversely to appellant and that the judgment in that case is *res adjudicata* and conclusive of appellants' right in the present case. They further contend "that under the facts and circumstances alleged in the instant complaint whether C & L under the facts proved in the McEntire case can assert claim for contribution or indemnity must have been asserted in the original action and a failure to do so is fatal to the complaint now before the Court." We do not agree to either contention.

As to the defense of *res judicata,* we think it without merit and can have no application here for the reason that the parties are not the same as in the McEntire suit and the issues and subject matter in the present case are entirely different. It is well settled that *res judicata* only applies to parties and their privies.

The answer to appellees' second contention must depend on the proper interpretation and effect to be given our Workmen's Compensation Law (§§ 81-1301—81-1349, Ark. Stats. 1947), and our Uniform Joint Tortfeasors' Act ( §§ 34-1001—34-1009, Ark. Stats. 1947).

We hold that appellee was not a proper party defendant in the original McEntire case for the reason that in that case Delta (appellee) carried insurance in accordance with the provisions of the Workmen's Compensation Law, above, and had paid to its employee, McEntire, all compensation due him under that act and its liability to him was thus ended. Delta had no tort liability to McEntire. Its liability to him was purely statutory and limited by the Workmen's Compensation Law, which was exclusive.

Section 81-1304 provides: "The rights and remedies herein granted to an employee subject to the provisions of this act [§§ 81-1301—81-1349], on account of personal

injury or death, shall be exclusive of all other rights and remedies of such employee, * * *.''

We now consider the provisions of the Joint Tortfeasors' Act [§§ 34-1001—34-1009] in connection with appellees' contention that appellants ''are now precluded from suing defendants (appellees) indirectly since they failed under the Joint Tortfeasors' Act of Arkansas to bring Delta Construction Company in as a third-party in the original action.'' Section 34-1001 of the Statute provides: '' 'JOINT TORTFEASORS' DEFINED.— For the purpose of this act [§§ 34-1001—34-1009] the term 'joint tortfeasors' means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.''

Section 34-1002 provides: ''RIGHT OF CONTRIBUTION—ACCRUAL—PRO RATA SHARE. — (1) The right of contribution exists among joint tortfeasors. (2) A joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof. (3) A joint tortfeasor who enters into settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement. (4) When there is such a disproportion of fault among joint tortfeasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tortfeasors shall be considered in determining their pro rata shares,'' and § 34-1007 provides:

''(1) * * * a defendant seeking contribution in a tort action may move * * * for leave as a third-party plaintiff to serve a summons and complaint upon a person not a party to the action who is or may be liable as a joint tortfeasor to him or to the plaintiff for all or part of the plaintiff's claim against him. If the motion is granted and the summons and complaint are served, the person so served, hereinafter called the third-party defendant, shall make his defense to the complaint of the

plaintiff and to the third-party complaint in the same manner as defenses are made by an original defendant to an original complaint. * * * The plaintiff shall amend his pleadings to assert against the third-party defendant any claim which the plaintiff might have asserted against the third-party defendant had he been joined originally as a defendant. The third-party defendant is bound by the adjudication of the third-party plaintiff's liability to the plaintiff as well as of his own liability to the plaintiff and to the third-party plaintiff.''

It appears obvious from a mere reading of the above provisions that the right of contribution between joint tortfeasors only is contemplated,—that is, where there is a common liability to an injured person in tort, or to persons who are ''liable in tort for the same injury to person or property.''

The present suit by appellants is based not on tort, but an indemnity contract that C & L had with Delta (contractor), which contract, as indicated, provided: ''The Contractor (Delta) shall hold the owner (C & L) harmless from any and all claims for injuries to persons or for damages to property happening by reason of any negligence on the part of the Contractor or any of the Contractor's agents or employees during the control by the Contractor of the Project or any part hereof.''

While we do not appear in any of our former decisions to have passed on the issues now presented, we think the reasoning of the Maryland Supreme Court in the case of *Baltimore Transit Company* v. *State*, 183 Md. 674, 39 A. 2d 858, 156 A.L.R. 460, in interpreting and applying the provisions of the Workmen's Compensation Law and the Uniform Tortfeasors' Act (both acts being similar in effect to our own) in circumstances similar to those presented here, is sound and applicable here. That court held against permitting a third-party defendant (Delta here) to be brought in or impleaded under the Uniform Tortfeasors' Act on the ground that to do so would enlarge the liability of the employer beyond the limits of the Workmen's Compensation Law. It was

there said: "There is no doubt that the Workmen's Compensation Act substituted for the common law liability of an employer for negligence, subject to the corresponding common law defenses, an absolute, but limited, liability regardless of fault, and made that liability exclusive, in the case of a conforming employer. (Citing the Act) * * * It is contended, however, that the employer's immunity from suit by the employee was modified by the passage of the Joint Tortfeasors Act in 1941, so as to permit the joinder of a conforming employer whose negligence caused or contributed to the happening of an accident, at the instance of the negligent third-party."

The Court then, after an analysis of the Uniform Tort-feasors' Act, continued: "We think these provisions make it clear that the Act is only applicable to a situation where there is a common liability to an injured person in tort. Such liability may be joint or several, but there can be no contribution where the injured person has no right of action against the third-party defendant. The right of contribution is a derivative right and not a new cause of action. . . .

"We think the weight of authority supports the proposition that the Compensation Law limits the employer's liability as well as the employee's recovery. The employer should not be held liable indirectly in an amount that could not be recovered directly, for this would run counter to one of the fundamental purposes of the compensation law."

We must point out that the extent of Delta's liability to C & L on Delta's indemnity contract with C & L would be measured by, or depend upon, its degree of negligence, if any, in contributing to McEntire's injury and pro-rated accordingly.

The judgment is reversed and the cause remanded with directions to overrule the demurrer and motion to dismiss.

Justice GEORGE ROSE SMITH not participating.