See, also, 175 F.Supp. 223.

**C & L RURAL ELECTRIC COOPERA-TIVE CORPORATION et al.,**
**Plaintiffs,**

v.

**Robert KINCADE, Eva Kincade and W. S. Kincade, Defendants and Third-Party Plaintiffs**

v.

**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Third-Party Defendant.**

**Civ. A. No. 760.**

United States District Court
N. D. Mississippi,
Delta Division.

May 13, 1960.

J. W. Barron, T. S. Lovett, Jr., Little Rock, Ark., for plaintiffs, C & L Rural Electric Coop. Corp. and Employers Mut. Liability Ins. Co. of Wisconsin.

V. J. Brocato, Clarksdale, Miss., James T. Kendall, Jackson, Miss., for defendants and third-party plaintiffs, Robert Kincade, and others.

Brewer, Brewer & Luckett, Clarksdale, Miss., Robert C. Cannada, Jackson, Miss., for third-party defendant, American Cas. Co.

CLAYTON, District Judge.

The case now before this court arises by way of a third party complaint filed in this cause by Robert Kincade, Eva Kincade, and W. S. Kincade, of Clarksdale, Mississippi, partners, doing business as Delta Construction Company, against American Casualty Company. For brevity third party plaintiffs will be referred to as the Kincades and the third party defendant will be called American. The issues are made by the third party complaint, as amended and by the answer thereto as amended.

1) On February 6, 1947, the Kincades entered into a construction contract with C & L Rural Electric Cooperative Corporation, an Arkansas corporation, afterward called C & L, for the construction in Arkansas of electric power lines. This contract was a standard form then used in Rural Electrification Administration projects, such as this, and contained, among other things, a "hold harmless" or indemnity clause in favor of C & L. As a result of this contract, the Kincades obtained from American a contractors

performance bond, a workmen's compensation policy, and a liability insurance policy.

2) An employee of the Kincades, Grady L. McEntire, was injured while working on this construction project. He was paid the benefits due him under American's workmen's compensation policy. He sued and recovered a judgment of $40,000 against C & L. American Casualty Company, as the workmen's compensation carrier of the Kincades, participated in the McEntire trial to the extent of protecting its rights of subrogation under Arkansas law, and it was reimbursed the sum of $8,658.47 from the McEntire judgment in satisfaction of its said statutory lien. Suit was then filed by C & L and its liability insurer, Employers Mutual Liability Insurance Company, against the Kincades, to recover from them under the indemnity or "hold harmless" clause of the construction contract of February 6, 1947, the total amount they had paid McEntire and American. Judgment finding C & L negligent and responsible to the extent of 40% and the Kincades negligent and responsible to the extent of 60% for the damages sustained by McEntire was affirmed by the Arkansas Supreme Court and final judgment was then entered in the Circuit Court of Lincoln County, Arkansas. Kincade v. C. & L. Rural Electric Cooperative Corp., 227 Ark. 321, 299 S.W.2d 67; C. & L. Rural Electric Cooperative Corp. v. Kincaid, 221 Ark. 450, 256 S.W.2d 337.[1]

3) The Arkansas judgment in favor of C & L was not paid by the Kincades, and C & L and its insurance carrier filed suit in this court against the Kincades thereon. This brought about the third party action now before this court wherein the Kincades seek to recover from American their full liability to C & L, and the expense incurred by the Kincades in defending the aforesaid suit against them in the courts of Arkansas. Judgment heretofore has been entered in this cause in favor of C & L and its said liability carrier against the Kincades for the full amount of said Arkansas judgment.

4) This case, by stipulation, was tried to this court on the question of liability only, with the question of damages reserved for later submission in the event liability is fixed against American.

5) The first claim advanced by the Kincades is that under the clear and express language of the policy American is liable. The Kincades' liability to C & L, as claimed in C & L's suit against the Kincades and as it was established by the final judgment in that suit, was solely by reason of the aforementioned "hold harmless" provision of the C & L-Kincades contract of February 6, 1947. This liability was not by operation of law but *was assumed by contract*.

6) Under the "Insuring Agreements" of the policy in question the basic statement of coverage upon which the Kincades assert this claim reads as follows:

"I. Bodily Injury Liability. To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of liability imposed upon him by law, or the liability of others *assumed by him under contract for damages*, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons, and arising out of *such of the coverages hereinafter defined as are indicated by specific premium in Item 3 of the declarations;*

COVERAGE A—Automobile Bodily Injury Liability. Ownership, main-

---

1. It is interesting to note that in an almost identical factual situation the Kentucky Court of Appeals arrived at an opposite conclusion, holding that the proper construction of the "hold harmless" or indemnity clause was that the indemnitor would hold the indemnitee harmless if its negligence was the sole or primary cause of the injury. Employers Mut. Liability Ins. Co. of Wis. v. Griffin Construction Co., Ky., 280 S.W.2d 179, 53 A.L.R.2d 967.

tenance or use of any automobile including the loading or unloading thereof.

COVERAGE B—Bodily Injury Liability other than Automobile. Any bodily injury hazard *not otherwise excluded in the policy* that does not come within Coverage A." (Emphasis added.)

7) But, on page 3 of the policy under '3. Definitions" there appears this:

" 'Contract' shall mean a warranty of goods or products or, if in writing, a lease of premises, easement agreement, agreement required by municipal ordinance, sidetrack agreements, elevator or escalator maintenance agreement or *any other contract or agreement specially described in this Policy."* (Emphasis added.)

■■ 8) The contract between C & L and the Kincades does not fall within these definitions and it is not "specially described in the Policy". Moreover, no specific premium is shown to have been billed or paid for this claimed coverage. Hence, by the unambiguous language of this policy, no coverage was afforded for the assumption of damages by the Kincades under the aforementioned "hold harmless" provisions of their contract with C & L, and no liability can be fixed against American from the language of the policy.

"In the absence of ambiguity, waiver or estoppel, contravention of public policy or positive law, fraud, mutual mistake, or maintainable equities, or a statute requiring a construction or effect other than that intended by the parties, it is the function of the court to construe and enforce the contract as it is written * * *." 44 C.J.S. Insurance § 290, p. 1140.

"In accordance with the rule requiring construction and enforcement of the contract as written, where the terms of the insurance contract are plain and unambiguous, the court cannot, under the guise of judicial construction or interpretation, make a new contract for the parties or one different from that which they intended to make, or, by implication or construction, add to the contract words, terms, conditions, exceptions, promises, or obligations, except that it may add such terms as might be imposed on the parties by the operation of a valid and applicable law with reference to which the parties might be deemed to have contracted." 44 C.J.S. Insurance § 290, p. 1143.

9) This is in accord with Arkansas cases. See Mercury Ins. Co. v. McClellan et al., 216 Ark. 410, 225 S.W.2d 931, 14 A.L.R.2d 806; Reynolds et al. v. New York Life Ins. Co., 202 Ark. 1013, 154 S.W.2d 817; Metropolitan Life Ins. Co. v. Guinn, 199 Ark. 994, 136 S.W.2d 681; National Life & Accident Ins. Co. v. Merritt, 200 Ark. 158, 138 S.W.2d 79; Craig et al. v. Golden Rule Life Ins. Co., 184 Ark. 48, 41 S.W.2d 769.

■■ 10) Additionally, the Kincades claim that American is estopped to deny coverage in favor of them and is required to protect them fully against the claims aforementioned of C & L and its liability insurance carrier because of such estoppel. This claim is two-pronged, being based on two separate theories. The first of these is that American is bound by agreements and representations of its agent, and is, therefore, estopped to deny liability to the Kincades on its liability insurance policy. It is difficult to distinguish this aspect of the Kincades' estoppel claim from a case claiming mutual mistake and praying for reformation. Briefly stated, this phase of the estoppel claim, is that the Kincades requested full coverage for all risks arising from their construction contract with C & L, from Morgan, who was American's agent; that Morgan was familiar with the contract between the Kincades and C & L and intended to furnish the coverage requested; that the partner in Kincades, who applied for the coverage, was inexperienced in insurance matters and relied on Morgan to furnish full coverage, and, that Morgan advised the Kincades that they were covered, after C & L notified the Kincades that they

would be held liable for any judgment obtained by McEntire. The evidence shows that the Kincades applied for full coverage and that the policy, as issued, was more comprehensive than the customary liability insurance policy for contractors and that the agent, Morgan, thought the Kincades were covered after C & L called on the Kincades to defend the McEntire suit under the "hold harmless" agreement. It also shows that *neither Morgan, nor the Kincade partner with whom he dealt, had this "hold harmless" agreement in mind when the insurance was applied for and issued.* Hence, there was no mutual mistake at the time when the contract was made. This leaves the Kincades, with respect to this aspect of their estoppel claim, dependent solely upon the relief of Morgan, the insurance agent, *after the fact* that coverage was provided the Kincades. But, this is not enough to work an estoppel against American, so as to enlarge or extend the coverage of the policy, beyond its clear and unambiguous language.

11) The other theory of the Kincades, with respect to their estoppel claim, is concerned principally with occurrences after McEntire's suit was filed against C & L. The Kincades confidently assert that these are sufficient to work an estoppel against American. Briefly stated, they are as follows:

a) That Morgan, American's agent, was notified of McEntire's injury. This is true, and McEntire received his benefits under American's aforementioned workmen's compensation policy. Processing this claim apparently originated with this notice.

b) That a letter, dated May 17, 1948, from C & L's attorneys, tendering the defense of the McEntire suit against C & L, to the Kincades and advising the Kincades that they would be held liable to C & L for any judgment obtained by McEntire, was delivered by the Kincades to Morgan and by Morgan to Light Adjustment Company, American's adjuster. This is also true.

c) That American did not deny liability, but an attorney representing American, *with respect to the workmen's compensation claim against C & L,* owned by American by reason of their compensation payments to McEntire as an employee of the Kincades and by operation of law, impliedly recognized American's liability under its liability insurance policy. This letter, however, was from the attorney to the home office of American and was, at most, the expression of an opinion that the Kincades could not be held liable to C & L, and a statement that he would be able to observe the trial of the McEntire case against C & L (since he would prosecute American's claim for its compensation lien in that case) "in the light of any future liability which the Co-Op might seek to enforce against *us* as expressed in this letter". (Emphasis supplied.)

d) American's adjuster wrote the Kincades saying that the attorney who represented American in the workmen's compensation subrogation matter, represented their mutual interests and requested the Kincades' cooperation. This is true and in accord with the workmen's compensation policy requirements.

e) That American's said attorney wrote the Kincades requesting that certain witnesses and papers be made available and stating that "our interest" is the same as that of the plaintiff (McEntire). This is a fact.

f) The attorney for C & L advised the Kincades of the McEntire judgment and gave notice that C & L would look to the Kincades for reimbursement. This letter was sent by the Kincades to Morgan, the agent, December 27, 1948, and by Morgan to American's adjustment company. This is not disputed.

g) That American joined with McEntire to establish the liability of C & L, which the Kincades are now asked to discharge, while remaining silent about the fact that liability would be denied under American's liability policy. American, pursuing its statutory right of subrogation, did have a common interest with McEntire in his suit against C & L and did participate in that trial to protect its said right.

h) That American did not deny liability, under its liability policy with the Kincades, until July 8, 1950, which was after the suit by C & L and their liability insurance carrier was filed against the Kincades. This was three years after McEntire was injured and more than two years after American received notice of C & L's claim against the Kincades, but was promptly done when the Kincades called on American to defend the C & L suit against them.

i) That as a result of the foregoing, the Kincades were led to believe that American recognized liability under the liability insurance policy in favor of the Kincades, and, that if American had denied liability, the Kincades would have conducted an independent investigation of their own of the McEntire claim and would have employed an attorney of their own to investigate and advise of their possible liability and recommend a course of action. They say also that they would have refrained from assisting McEntire in obtaining the judgment which they claim they did by keeping American's counsel informed as to the whereabouts of witnesses, making them available for taking depositions, and furnishing documents for use in the trial. Their assistance was negligible and almost nonexistent. The Kincades also say that they would have done whatever else was necessary, under the facts developed, to have protected their rights and that the attorneys representing American, in the workmen's compensation subrogation claim, were not interested in developing facts which would establish the Kincades' non-liability. But, it does not appear that the Kincades' rights, in the McEntire suit, or, with respect to the C & L suit, were adversely affected in any way, or that the result in either of said suits would have been different in any respect.

■ 12) Even if all of these various aspects of the Kincades' claim that the coverage afforded to them by American's liability insurance policy was enlarged or extended by estoppel, to include protection against the claim of C & L and its insurance carrier, are viewed in a light most favorable to the Kincades (which the evidence before this court would not justify), this claim must fail.

"As a general rule, the doctrines of waiver or estoppel can have a field of operation only when the subject matter is within the terms of the contract, and they cannot operate radically to change the terms of the policy so as to cover additional subject matter. Accordingly, it has been held by the weight of authority that waiver or estoppel cannot create a contract of insurance or so apply as to bring within the coverage of the policy property, or a loss or risk, which by the terms of the policy is expressly excepted or otherwise excluded." 45 C.J.S. Insurance § 674, p. 616. Arkansas courts, and Federal courts applying Arkansas law, have followed this rule. See Bankers Nat. Ins. Co. v. Hembey, 217 Ark. 749, 233 S.W.2d 637; Hartford Fire Ins. Co. v. Smith, 200 Ark. 508, 139 S.W.2d 411; Montgomery v. M. F. A. Mut. Ins. Co., 8 Cir., 1957, 250 F.2d 357; Standard Acc. Ins. Co. v. Roberts, 8 Cir., 1942, 132 F.2d 794. Those cases are decisive here.

■ 13) There is left for disposition only one other question which is not precisely framed by the pleadings, but is implicit in this controversy. Should the Kincades be permitted to recover here from American all or any of the amount recovered by American from C & L, on American's statutory right, under the workmen's compensation laws of Arkansas, to subrogation with respect to payments made by American to McEntire, under the workmen's compensation policy issued by American in favor of the Kincades? The Kincades contend that if no such recovery is here permitted, they would thus lose the benefit of the workmen's compensation insurance for which they contracted with American and upon which they paid the premiums. That may be the practical and ultimate effect of a denial of this aspect of the Kincades'

claims against American, but, if so, it would be of the Kincades own doing.

14) In an effort to reach a proper solution and to find a correct answer to this question, this case was remanded to the docket and additional briefs were requested and submitted by the parties. Neither these briefs nor our own independent research have produced a case precisely in point. However, applicable law has been developed in a number of cases which, by analogy, is decisive here. In a well reasoned case, State, for Use of State Accident Fund et al. v. New York, P. & N. R. Co., 141 Md. 305, 118 A. 795, 797, where an action was brought against a third party, for the benefit of the compensation carrier and the widow of a deceased compensable employee, in which the third party defended on the basis that *the employer of the decedent had contracted to indemnify the third party defendant against liability for the fatal accident, and that the defendant, if made liable, could recover from the employer under this indemnity agreement, and thus the employer would lose the benefit of his compensation insurance,* the Court said:

" * * * It is argued that the defendant, if made liable to damages in this case, could recover from the employer under his indemnity agreement, and he (the employer) would thus lose the benefit of the insurance for which the plaintiff contracted. This argument would have greater force if it were being advanced by the employer, and if his obligation, which the State Accident Fund insured, was of the same nature as the liability against which his agreement with the defendant was designed to afford protection. But the contract of insurance and the agreement of indemnity are different, both as to parties and as to their purpose and effect. One assures the payment of compensation to injured employees of the insured or their dependents, which may be claimed from the employer, regardless of any question of fault or negligence, while the other,

as here invoked, is an undertaking of the employer to save harmless the defendant from a liability asserted upon a theory which the contract of insurance disregards. If the plaintiff should recover in this action, and the employer were then to reimburse the defendant by reason of the indemnity agreement, there would be no right of recourse to the State Accident Fund, because the insurance it provided was directed solely to the liability of the employer to his employees under that act, and *could not be extended to obligations which the employer assumed independently under an agreement with the third party.*" (Emphasis added.)

15) In a situation similar to that in the last case aforementioned, the Wisconsin Court said:

"(17) Defendant, however, maintains the action should not be permitted when, as here, by contract the Meyer Company is obligated to indemnify the owner of the building for any judgment based upon a violation of the safe place statute, because Meyer Company will then be paying both workmen's compensation and tort damages. We do not see why Meyer Company may not, if it pleases, contract to indemnify the respondent but we cannot permit such a contract to deprive a third party of rights of action which the statute expressly gives him. * * * " Umnus v. Wisconsin Public Service Corp., 260 Wis. 433, 51 N.W.2d 42, 46.

16) If this court should now take away from American the proceeds of the judgment which American obtained pursuant to its statutory right under the laws of Arkansas, that right will either have been destroyed or modified. The practical effect of such action would be to hold that American's contract of workmen's compensation insurance extended to an obligation which the Kincades assumed independently under a contract

with the third party. This cannot be done. See also Western Union Telegraph Co. v. Cochran, 302 N.Y. 545, 99 N.E.2d 882; Treadwell Co. v. United States Fidelity & Guaranty Co., 275 N.Y. 158, 9 N.E.2d 818; Larson, Workmen's Compensation, § 76.30 and § 76.41; and 101 C.J.S. Workmen's Compensation § 985, p. 466.

It follows, from what has been said, that there is no liability of American to the Kincades on this third party complaint.

An order may be prepared for entry in accordance herewith.

