Freddie L. ROSS and Barbara Ann Ross, Plaintiffs,

v.

Herman J. SMITH, d/b/a Herman J. Smith & Company, a Sole Proprietorship, Defendant and Third-Party Plaintiff,

v.

LOCKE PLUMBING COMPANY, Inc., Third-Party Defendant.

No. PB 70–C–5.

United States District Court, E. D. Arkansas, Pine Bluff Division.

Aug. 19, 1970.

Bill Holland, Bridges, Young, Matthews & Davis, Pine Buff, Ark., for plaintiffs.

R. A. Eilbott, Jr., Reinberger, Eilbott, Smith & Staten, Pine Bluff, Ark., for defendant.

John B. Thurman, Barber, Henry, Thurman McCaskill & Amsler, Little Rock, Ark., for third-party defendant.

## MEMORANDUM OPINION

OREN HARRIS, Chief Judge.

This tort proceeding was originally filed by Freddie L. Ross and Barbara Ann Ross, residents and citizens of Jefferson County, Arkansas, against Herman J. Smith, d/b/a Herman J. Smith & Company, A Sole Proprietorship, a resident and citizen of the State of Texas, with principal offices located in Fort Worth, Texas. The jurisdictional amount existing, the diversity action was properly removed by the defendant to this court from the Circuit Court of Jefferson County, Arkansas. The Defendant Smith responded in this court with an answer and subsequently filed a third party complaint against Locke Plumbing Company, Inc., alleging an indemnity agreement between Smith and Locke which would protect Smith as to the subject matter of the complaint filed against Smith. Even though Locke was a citizen of the State of Arkansas, the third party complaint against it did not defeat jurisdiction in that an independent basis of jurisdiction of the federal courts is not necessary to support a third party proceeding under Rule 14 of the Federal Rules of Civil Procedure. People of State of Illinois v. Maryland Casualty Company, D.C., 2 F.R.D. 241;

3 Moore's Federal Practice § 14.26; Williams, et al v. Keyes, et al., 125 F.2d 208 (C.A. 5th, 1942); Waylander-Peterson Co. v. Great Northern Ry., 201 F.2d 408, 415 (C.A. 8th 1953).

Locke responded to the third party complaint admitting the existence of the contract which was made an exhibit to the third party complaint, but denying its applicability and setting up the exclusiveness of the Arkansas Workmen's Compensation Act as to Smith's alleged cause of action. Ross was an employee of Locke at the time of the occurrence and received benefits under the Workmen's Compensation Act. Smith, after securing an appropriate order, amended its answer setting up certain other defenses as to Ross' claim and the case was tried to a jury on the 29th day of May, 1970, resulting in a verdict against Smith on behalf of Ross in the sum of $21,175.00.[1] The issues between Smith and Locke were not submitted to the jury but reserved to the Court, which is the subject of this opinion. Since all issues in the proceeding had not been fully adjudicated, judgment, pursuant to the verdict of the jury, has not been entered but withheld as provided by Rule 54(b) of the Federal Rules of Civil Procedure.

The primary question for the Court's determination is the meaning and effect of the indemnity agreement admittedly entered into between Smith and Locke as to the jury verdict rendered against Smith on behalf of Plaintiff Ross. Smith was the prime contractor for the construction of an apartment complex in Pine Bluff, Arkansas, and among the sub-contractors engaged by Smith was Locke who was to do all the plumbing work at the complex. Smith and Locke entered into certain contracts relevant to this work and the relative duties and obligations of each party, among which was the indemnity agreement to be construed by the Court relevant to the duties of Locke. During the course of the construction, Ross, an employee of Locke, while on duty for Locke and within the provisions of the Arkansas Workmen's Compensation Act, was injured in one of the rooms of the apartment complex which injuries were found by the jury to be due to the negligence of Smith in improperly stacking certain sheets of sheetrock. It was admitted that the agents of Smith stacked the sheetrock and it was found by the jury that such stacking was the proximate cause of the injury to Ross and a verdict in the amount of $21,175.00 was awarded Ross and against Smith.

The relevant portions of the indemnity agreement are as follows:

"You are responsible for all damage or claims for damage arising out of your operations under this contract. If Herman Smith & Co. furnishes tools, equipment, scaffolds, or any other material of any nature to you or your employees or if you and your employees work on structures erected or controlled by Herman Smith & Co. or others, *you agree to assume the duty of inspecting the premises, structures, scaffolds, tools, equipment or any other material of any nature to satisfy yourselves as to their safety and to take such corrective action you deem advisable or necessary.*

"*You agree to indemnity and forever hold Herman Smith & Co. harmless and to reimburse Herman Smith & Co. for any loss, expense, or payment of any nature resulting from claims by your employees* or any other persons *due to injury* or death or damage to property *occuring on the job,* or the ways and means adjoining thereto, in any way arising out of your work or connected therewith, *whether or not caused by hidden defects or negligence or alleged negligence of Herman Smith & Co. or its employees.*" (Emphasis supplied)

As previously stated, the sole question to be decided by the Court is whether or

---

1. Immediately prior to trial Barbara Ann Ross was dismissed from the action with prejudice on motion of the plaintiff.

not the indemnity agreement above referred to is enforceable by Smith against Locke as to the injuries sustained by Ross and more particularly the judgment obtained by Ross against Smith along with the attendant costs and expenses incurred and to be incurred.

Smith contends that Locke is bound by the terms of the indemnity agreement as to the judgment rendered against Smith on behalf of Ross and prays an order of the Court relieving Smith from further duties and obligations as to said judgment or any duties and obligations arising out of the same and further prays for a judgment against Locke for all of its costs previously expended, including but not limited to deposition costs, attorneys' fees and loss of time by its employees in the preparation and trial of the lawsuit in issue.

Locke, in its answer and brief interposes three defenses to the position taken by Smith which are, stated briefly, as follows:

(a) The third party complaint does not state facts upon which relief can be granted, Locke's sole legal responsibility for any injury sustained by Ross, being restricted to benefits under the Arkansas Workmen's Compensation Act, Ross being an employee of Locke.

(b) The indemnity agreement entered into between Locke and Smith does not protect Smith against an incident which was occasioned solely and proximately by the negligence of Smith.

(c) Even if Smith can maintain its action for indemnity against Locke as to the injuries sustained by Ross and even if the Court finds that the indemnity agreement is applicable and binds Locke as to the judgment rendered against Smith, Smith is not entitled to be relieved from further duties or obligations relevant to the judgment, at this stage of the proceedings, nor is Smith entitled to any attorney's fees he has incurred.

Since the instant question arises from a contractual agreement between Smith and Locke, there is no fact question in dispute. In construing the terms of the contract the Court will, therefore, consider the posture of the parties as disclosed by the record as its findings and conclusions of law incorporated in this opinion.

First, considering the contentions of Locke, it is admitted by Locke in its brief that under the authority of C. & L. Electric Rural Electric Co-op Corp. v. Kincaid, 221 Ark. 450, 256 S.W. 2d 337, that it can be held liable to indemnify a tortfeasor for injury to its own employee. The Court agrees. The indemnity agreement entered into between Smith and Locke meets all the requirements of the Arkansas court in C. & L. v. Kincaid. In fact, the indemnity agreement involved here affords even greater protection to the indemnitee (Smith) than did the one construed by the court in Kincaid. There, the indemnitor bound itself only as to the negligence on its own part, whereas here, the indemnitor (Locke) bound itself even as to the negligence of the indemnitee (Smith).

The Court, therefore, concludes that the first contention of Locke that the third party complaint does not state facts upon which relief can be granted, for the reasons stated therein, is without merit.

The second contention by Locke reaches the very heart of the issue involved here and that is whether the indemnity agreement protects Smith as to the judgment rendered against it on behalf of Ross in view of the verdict finding that Ross' injuries were due solely to the negligence of Smith. There is no contention that Locke was guilty of any independent act of negligence that caused or contributed to the injuries of Ross. On this contention the Court must look to the terms of the contract, giving effect to all of its applicable provisions. The Court is convinced that when read in context with its meaning the terms of the contract are clear and unequivocal in that Locke not only had a duty to inspect the

premises to satisfy itself as to their safety and to take such corrective action as it deemed necessary or advisable, but further agreed as follows:

> *"You agree to indemnify and forever hold Herman Smith & Company harmless and to reimburse Herman Smith & Company for any loss, expense, or payment of any nature resulting from claims by your employees or any other person due to the injury or death or damage to property occurring on the job, or the ways and means adjoining thereto, in any way arising out of your work or connected therewith, whether or not caused by hidden defects or negligence or alleged negligence of Herman Smith & Company or its employees."* (Emphasis supplied)

The Court finds no ambiguity whatsoever in the above quoted clause of the contract and further that it was the obvious intent of the parties that Locke was to indemnify Smith from any claim by any of Locke's employees for injuries occurring on the job, whether those injuries were caused by hidden defects or negligence on the part of Smith. The Court does not believe that such intent could have been stated in more definite terms than were used in the Indemnity Agreement executed between Smith and Locke. Locke contracted to perform certain plumbing work for Smith for which Locke was to be paid a substantial sum of money and the indemnity agreement was a part of the overall contract between the parties. There was consideration for the indemnity agreement which was freely entered into between parties for their mutual advantage and profit and Locke is bound by its terms.

The only question remaining on this issue is whether or not such a contract which indemnifies Smith against his own negligence, is enforceable under Arkansas law. C. & L. v. Kincaid is of no assistance here since the indemnity agreement being construed by the Court there did not indemnify the indemnitee against his own negligence. The agreement there only indemnified the indemnitee as to the negligence of the indemnitor. Parenthetically, the Court observes that C. & L. v. Kincaid, supra, provides no authority for prorating the negligence between Smith and Locke because the indemnity agreement in Kincaid did not bind the indemnitor to the indemnitee's negligence. In that the terms of the indemnity agreement are clear and unequivocal, Locke is fully bound for Smith's negligence in the instant case provided the indemnity agreement is not void for reasons of public policy.

It is stated in 27 A.L.R. 3, Sec. 3 at Page 682 as follows:

> "The courts have uniformly held or recognized that public policy does not prohibit the agreement of a building contractor to indemnity the contractee owner against loss or liability on account of injuries to or the death of third persons which arise from or in connection with the contract work *and are caused by or result from the owner's negligence,* and that such an agreement is valid and enforceable." (Emphasis supplied)

It is further stated in Sec. 9, at Page 712:

> "The contractor's specific agreement to indemnify the owner against loss or liability on account of injuries to third parties growing out of or connected with the work and caused by the negligence of the owner has been uniformly upheld and enforced where the injured person was an employee of the contractor or other workman on the job."

Numerous cases are cited in this lengthy annotation on indemnity agreements and in all of the cases, the language of the indemnity agreement has been held to control and where it clearly included an agreement on the part of the indemnitee to indemnify the indemnitor even for the indemnitor's own negligence, even if that negligence be the sole cause of the injury, the indemnity agreement has been held enforceable.

On the question of public policy the District Court of Illinois in United States Steel Corp. v. Emmerson, 141 F.Supp. 143, impressively pointed out the modern trend at Page 145 as follows:

"While there are early cases in some states expressing a public policy against indemnifying a tortfeasor for his own negligence it is today well established that the parties may so contract. Modern legal theory does not ignore the desirable objective of accident prevention which motivated the earlier decisions. But it finds nothing in the financial arrangements by which the business community through insurance and indemnity agreements allocates losses, inconsistent with that objective. The one on whom the contract imposes the liability has the same incentive to prevent the losses. Increased premiums and increased cost of services or materials act to deter the insured or indemnitees in the long run. At the same time society benefits through the spreading of the burdens of these unfortunate events and business does not have to risk the uncertainties of uninsured or unindemnified losses."

Judge Hoffman, in the just cited case, was construing an indemnity agreement which was far less strong and implicit as the one executed by Locke in this case.

As to the Arkansas decisions, Locke cites Arkansas Power & Light Co. v. Kerr, 204 Ark. 238, 161 S.W.2d 403 (1942) and Dessert Seed Co. v. Drew Farmers Supply, 248 Ark. 858, 454 S.W. 2d 307 (1970). The Court does not feel these cases are controlling here since they involved an attempted disclaimer either as to products within the exclusive control of a bailee as in the *Kerr* case or an express warranty accompanied by a disclaimer as in the *Dessert Seed* case. Innocent purchasers who were not a party to any of the contractual agreements were involved in the *Dessert Seed* case and there was even a question as to whether the various disclaimers or words

of limitation were properly brought to the attention of the other parties.

The Arkansas case precisely in point to the question here is Hardeman v. Hass, 246, Ark. 547, 439 S.W.2d 281 (1969) where the court was construing an indemnity agreement in a fact situation analogous to the one here. In *Hardeman* the injury involved was to one Turpin, an employee of the sub-contractor who was injured during the course of his employment and the court stated the issue, as follows, at page 553, 439 S.W.2d at page 285:

"The precise question is whether this indemnity provision obligates the subcontractor to indemnify the prime contractor for damages arising out of the negligence of prime contractor which was the proximate cause of Turpin's injuries."

The indemnity agreement there involved was as follows:

"9. Subcontractor agrees to save and indemnify and keep harmless Contractor, Owner and Architect-Engineer against all liability, claims, demands or judgments for damages arising from accidents to persons or property occasioned by Subcontractor, his agents or employees, and against all claims or demands for damages arising from accident to Subcontractor, his agents or employees, whether occasioned by subcontractor or his agents or his employees;  *  *  *"

The court in *Hardeman* found that C. & L. v. Kincaid, supra, was of no aid because the indemnity provision therein was so different from the one under their consideration, as this Court held earlier in this opinion.

Holding, and properly so, in *Hardeman*, supra, that the intention of the indemnitor to so bind itself must be expressed in clear and unequivocal terms and to the extent that no other meaning can be ascribed, the Court held that the indemnity agreement was ambiguous and refused to hold that the indemnitor in the case was responsible for the injury to

its employee which injury was caused by the negligence of the indemnitee.

The question of public policy was not raised by any of the parties or the court and the court concluded its discussion of the particular indemnity agreement being considered with the following language at page 555, 439 S.W.2d at page 285:

"In view of the uncertainty of the manner in which 'occasioned by' was used in this contract, we cannot say the subcontractor expressed an intent, in words clear and unequivocal, to bind itself for the negligence of the prime contractor. *That is especially true in face of the fact that it would require no extraordinary skill in draftsmanship to so bind the subcontractor in words and phrases of absolute certainty.*" (Emphasis supplied)

The Court is of the opinion and concludes that any reasonable interpretation of the decision in *Hardeman* would be that the Supreme Court of Arkansas would uphold and enforce the indemnity agreement between Locke and Smith because it is so clear in its intent and meaning. The requirement that the intention of the indemnitor to obligate itself for the negligence of the indemnitee "must be expressed in clear and unequivocal terms and to the extent that no other meaning can be ascribed" appears to be adequately met by the language of the indemnity agreement between Locke and Smith.

The Court further concludes that great emphasis should be placed upon the statement in *Hardeman* to the effect that it would not require any extraordinary skill and draftsmanship to bind the indemnitor in words and phrases of absolute certainty.

■ The Court, therefore, concludes that the indemnity agreement between Locke and Smith under consideration is not against the public policy of the State of Arkansas and should be enforced to the end that Locke is responsible for the judgment rendered against Smith on behalf of Ross and for all expenses

incurred by Smith arising out of this litigation.

The third contention raised by Locke presents an interesting question of some concern but not for the reason that Smith might not have specifically sought to be discharged from further duties or obligation with respect to any judgment that might be rendered against it. The Court may grant any relief to which it feels any of the parties is entitled whether such has been specifically demanded or not under Rule 54(c) of the Federal Rules of Civil Procedure. Troutman v. Modlin, 353 F.2d 382 (8th Cir. 1965).

The Court would suggest that a more orderly conduct of these proceedings henceforth would be accomplished should Locke assume the responsibility for the pending litigation. The Court is aware of the fact that from a purely technical standpoint, Smith is only entitled to a judgment over against Locke for any sums it actually is called upon to pay as a result of this litigation. It may be that Locke would want to make an independent decision as to whether or not to satisfy the judgment and reimburse Smith for its recoverable expenses incurred to date and as to whether or not appellate relief should be sought from the jury verdict. Such action on the part of Locke could very well alleviate a somewhat inconclusive result of these proceedings at this level. The Court cannot grant a judgment or issue an order that has the effect of relieving Smith from the judgment rendered against it on behalf of Ross and, therefore, must qualify its final order in this proceeding by granting to Smith a judgment over against Locke as to the judgment rendered against Smith on behalf of Ross, to the extent that Smith actually satisfies that judgment, plus, of course, the provable loss sustained by Smith in defending the action.

■ There remains the question as to the effective date of the interest on the judgment to be entered as a result of the jury verdict against Smith on behalf of Ross in the sum of $21,175. The Plaintiff Ross is entitled to interest from

the date of the jury verdict returned in open court and entered of record May 29, 1970. Hardeman v. Hass, supra, 246 Ark. at Page 555, 439 S.W.2d 281.

An order in accordance with this opinion will be entered with the express understanding that the Court would welcome any action on the part of the parties that would finalize these proceedings. Should a hearing as to the actual losses sustained by Smith in defending the cause of action be necessary, such hearing would be confined to that issue and that issue alone, the Court having ruled specifically that Smith is entitled to a judgment against Locke on its third party complaint as to the judgment rendered against it on behalf of Ross.