# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 97-2502 and 97-2611

_____

Bryan Robertson,                                    *
                                                    *
    Plaintiff - Appellee,                           *
                                                    *
v.                                                  *
                                                    *
Norton Company; Williams Equipment    *   Appeals from the United States
& Supply Company,                             *    District Court for the
                                                    *    Eastern District of Arkansas.
    Defendants - Appellants,                       *
                                                    *
--------------------------------------------------- *
Continental Insurance Company,           *
                                                    *
    Intervenor Plaintiff - Appellee.            *

_____

Submitted: January 12, 1998
Filed: June 1, 1998

_____

Before LOKEN and MURPHY, Circuit Judges, and ALSOP,[*] District Judge.

_____

LOKEN, Circuit Judge.

_____

[*]The HONORABLE DONALD D. ALSOP, United States District Judge for the District of Minnesota, sitting by designation.

On August 12, 1992, Bryan Robertson was using a Black & Decker heavy-duty power sander/grinder on a concrete bridge in Mountain View, Arkansas, working for a construction company owned by his father. Robertson released the grinder's trigger and lifted it from the bridge surface. The ceramic-composite grinding wheel exploded, and splinters severely injured Robertson's leg. After collecting workers' compensation benefits, Robertson sued the grinding wheel manufacturer, Norton Company, and its distributor, Williams Equipment and Supply Company, for breach of warranty and strict liability in tort. The compensation insurer intervened to assert its right to recover benefits paid.

Following trial, the jury found that the accident was proximately caused by defendants' conduct in manufacturing and selling the grinding wheel in a defective and unreasonably dangerous condition, and by Robertson's own negligence. The jury found that Robertson suffered damages of $129,482.55 and apportioned fault under the Arkansas comparative fault statute at 13% for Robertson and 87% for defendants. Norton and Williams appeal the judgment entered on this verdict. The issues are (1) whether the district court erred in admitting expert testimony that defendants' product warnings were inadequate; (2) whether Robertson presented sufficient evidence that Norton manufactured and Williams distributed the grinding wheel that exploded; and (3) whether the court committed plain error by failing to instruct the jury to assign comparative fault to Robertson's employer. Agreeing with defendants' first contention, we reverse and remand for a new trial.

## I. Expert Testimony About Product Warnings.

At the time of the accident, Robertson had worked on bridges for over five years and was familiar with the Black & Decker grinder. Norton grinding wheels were purchased separately from the grinder and bore a warning label stating: "Warning. Improper use may cause grinding wheel breakage and serious injury. Comply with ANSI B7.1, OSHA, and safety guide furnished with package." The "safety guide" was

a separate pamphlet shipped to distributors with each box of wheels. It instructed users that grinders should be used with a wheel guard and should be stopped "on the work." Williams placed these pamphlets near its display of grinding wheels but did not instruct employees to make sure customers received them. Robertson's father purchased grinding wheels from Williams but did not pick up the safety guide. When injured, Robertson was using a grinder without a wheel guard (though he knew OSHA regulations require a guard), and he lifted the still-spinning wheel off the work before it exploded.

A principal witness at trial was Robertson's ceramics expert, Dr. Ross Firestone. Much of Dr. Firestone's testimony concerned whether the grinding wheel exploded because of an unreasonably dangerous manufacturing defect. At issue here is his further testimony that Norton's product warnings were "completely inadequate" because the warning label did not explain "improper use," because a copy of the safety guide was not enclosed with each wheel in "blister pack" packaging, and because the warning label's cross reference to a 120-page ANSI publication was ineffective. The district court overruled defendants' attempts to exclude this testimony by a motion in limine and by a continuing objection at trial. We review the district court's decision to admit expert testimony for abuse of discretion. See General Elec. Co. v. Joiner, 118 S. Ct. 512, 519 (1997).

Our prior opinions have noted problems with expert testimony regarding the adequacy of product warnings:

> In the first place the questions called for opinions of the witnesses on one of the ultimate questions in the case; they invaded the province of the jury on a question which the jury was entirely capable of answering without the benefit of their expert opinion, were we to assume that these witnesses had qualified as experts on the adequacy of labeling.

\* \* \* \* \*

Further . . . these two witnesses were [not] qualified to express an opinion as to the adequacy of warnings and directions. . . . Whether or not a given warning is adequate depends upon the language used and the impression that it is calculated to make upon the mind of an average user of the product. Questions of display, syntax, and emphasis are involved in evaluating a warning, or set of directions, and upon those matters plant pathologists and entomologists are not necessarily qualified to speak.

Walton v. Sherwin-Williams Co., 191 F.2d 277, 285-86 (8th Cir. 1951); accord Strong v. E.I. DuPont de Nemours Co., 667 F.2d 682, 686 (8th Cir. 1981). All of these problems are present in this case. First, while Dr. Firestone was undoubtedly qualified to testify about a manufacturing defect in an exploding ceramic grinding wheel, that did not qualify him as an expert on grinding wheel warnings. He had never designed a warning for a ceramic product.[1] His knowledge of ceramics would not provide the expertise on "questions of display, syntax, and emphasis" that the jury would expect from a bona fide warnings expert.

Second, Dr. Firestone's opinion was not supported by the kind of scientific theory, practical knowledge and experience, or empirical research and testing that permit assessment "of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993), quoted in Gier v. Educational Serv. Unit No. 16, 66 F.3d 940, 943 (8th Cir. 1995). For example, Dr. Firestone criticized Norton's warning label for not explaining "improper use." But grinding wheels are used in grinders. Firestone did not consider whether Norton could feasibly provide a description of "improper use" that

---

[1]Dr. Firestone's formal education in warnings consisted of a college entry-level psychology course. His relevant qualifications were past membership in the Human Factors Society and limited experience looking at literature and drafting warnings for a coal gasification facility. He was not familiar with the ANSI guidelines for warnings.

would accurately and effectively encompass all the machines in which its grinding wheels might be used. Indeed, he did not even review the warnings accompanying the Black & Decker grinder in question to determine whether "improper use" was effectively explained to end users. Thus, his opinion was not sufficiently reliable under Daubert. See Wright v. Willamette Indus., 91 F.3d 1105, 1108 (8th Cir. 1996).

Third, Dr. Firestone's opinion squarely addressed an ultimate issue of fact. Although that is permissible, see Fed. R. Evid. 704(a), courts must guard against "invad[ing] the province of the jury on a question which the jury was entirely capable of answering without the benefit of . . . expert opinion." Walton, 191 F.2d at 285. Given his lack of qualifications regarding warnings and his failure to consider in a systematic fashion the problems inherent in devising a warning for a product of this type, Firestone's opinion added nothing helpful to the jury's consideration of this issue.

Finally, Dr. Firestone's improper opinion testimony was unfairly prejudicial. The warning issue was relevant to Robertson's strict liability and breach of warranty claims. See Hill v. Searle Laboratories, 884 F.2d 1064, 1066-67 (8th Cir. 1989) (under Arkansas law, inadequate warning is a basis of strict liability and breach of warranty liability). The court instructed the jury that "[a] product may be defective if it does not have a reasonably adequate warning," and that to be merchantable a product must "be adequately . . . labeled." These instructions tracked Dr. Firestone's opinion that Norton's warnings were "completely inadequate." Robertson's inadequate warning claim was emphasized in opening and closing arguments.

Robertson argues that Norton and Williams failed to preserve this issue because the verdict form does not reveal whether the jury found a manufacturing defect, an inadequate warning, or both. We disagree. When evidence relevant to one of two theories subsumed in a verdict is erroneously admitted, the verdict is set aside unless we are "convinced that the jury proceeded only on the sound ground." Mueller v. Hubbard Milling Co., 573 F.2d 1029, 1039 (8th Cir.), cert. denied, 439 U.S. 865

-5-

(1978). We are not convinced the jury based its verdict solely on the hotly contested manufacturing defect claim. Accordingly, we conclude that the district court abused its discretion in admitting this opinion testimony. Defendants are entitled to a new trial.

## II. Sufficiency of the Evidence.

The grinding wheel exploded into fragments, making identification of its manufacturer a key issue at trial. On the one hand, Robertson testified the wheel had a Norton label. His father testified he only bought Norton wheels from Williams, and there was evidence Williams only sold Norton wheels. On the other hand, laboratory analysis of a wheel fragment showed it was manufactured with barium sulphate filler, and Norton presented evidence it stopped using that filler compound many years before the accident. On appeal, defendants argue they are entitled to judgment as a matter of law because Robertson presented insufficient evidence that Norton manufactured and Williams distributed the defective wheel. Reviewing the conflicting trial evidence on this issue in the light most favorable to the jury's verdict, as we must, we agree with the district court that the evidence was sufficient to permit the jury to find that Norton manufactured and Williams distributed a grinding wheel that exploded due to a manufacturing defect.

## III. Comparative Fault of Robertson's Employer.

Norton and Williams contended at trial that the negligence of Robertson's employer was an intervening sole proximate cause of his damages. The district court instructed the jury on intervening cause. However, the court refused defendants' request to include Robertson's employer in its comparative fault interrogatory to the jury. On appeal, Norton and Williams argue the court erred in refusing to instruct the jury to apportion fault to Robertson's employer as a so-called "phantom" party, an instruction we encouraged in dicta in Chaney v. Falling Creek Metal Products, Inc., 906 F.2d 1304, 1308 n.7 (8th Cir. 1990).

There are two distinct aspects to this problem. First is the question we squarely addressed in <u>Chaney</u>, whether the district court properly submitted the issue of intervening cause. We reversed in <u>Chaney</u> because the jury's interrogatory answers suggested that plaintiff's negligence was the intervening cause (rather than her employer's negligence), and the trial court had not instructed on the foreseeability of that negligence to the defendant product manufacturer. There is no such problem in this case. Although Norton and Williams mention the intervening cause instruction in passing, they do not raise an intervening cause issue on appeal. Thus, our *holding* in <u>Chaney</u> is not at issue in this case.

The second question concerns the suggestion in <u>Chaney</u>'s footnote 7 that an allegedly negligent employer should be included as a phantom party in the Arkansas comparative fault instruction "to clarify the legal effect of [the employer's] conduct." The district court concluded this footnote was implicitly overruled by <u>Hiatt v. Mazda Motor Corp.</u>, 75 F.3d 1252, 1258 (8th Cir. 1996). However, <u>Hiatt</u> did not involve a workers' compensation situation, so it does not squarely answer the question presented by this case. The relevance of an employer's negligence to an employee's tort claim against a third party is a contentious segment of workers' compensation law, with the varying answers often turning on differences in the workers' compensation statutes enacted by the several States.[2]

Under the Arkansas statutory workers' compensation regime, employees injured on the job give up tort remedies against their employers in exchange for guaranteed benefits without regard to fault. <u>See</u> Ark. Code Ann. § 11-9-105. Employees recover

---

[2]<u>See generally</u> <u>Edmonds v. Compagnie Generale Transatlantique</u>, 443 U.S. 256, 273-81 (1979) (Blackmun, J., dissenting); <u>Dietz v. General Elec. Co.</u>, 821 P.2d 166 (Ariz. 1991), <u>cert. denied</u>, 503 U.S. 998 (1992); <u>Lake v. Construction Mach., Inc.</u>, 787 P.2d 1027 (Ala. 1990); <u>Heckendorn v. Consolidated Rail Corp.</u>, 465 A.2d 609 (Pa. 1983); <u>Lambertson v. Cincinnati Corp.</u>, 257 N.W.2d 679 (Minn. 1977); La. Civ. Code Ann. art. 2323(A); Utah Code Ann. § 78-27-39; Wash. Rev. Code Ann. § 4.22.070(1).

statutorily defined benefits, and employers avoid the risk of large tort verdicts.  See Hood & Hardy, Workers' Compensation & Employee Protection Laws in a Nutshell 26-27 (1984).  However, the injured employee retains fault-based causes of action against responsible third parties such as Norton and Williams, regardless of the employee's eligibility for workers' compensation benefits.  Moreover, the employer or its workers' compensation insurer may recover benefits paid to the injured employee from a third party tortfeasor.  See Ark. Code Ann. § 11-9-410.  At the same time, the employer's immunity from direct action by the injured employee bars the third party tortfeasor from asserting a contribution claim based upon the employer's negligence.  See W.M. Bashlin Co. v. Smith, 643 S.W.2d 526, 534 (Ark. 1982); C & L Rural Elec. Coop. Corp. v. Kincaid, 256 S.W.2d 337, 340-41 (Ark. 1953).

We conclude the district court did not abuse its discretion in refusing to include Robertson's employer as a phantom party in the comparative fault instruction.  The comparative fault statute provides that "liability shall be determined by comparing the fault chargeable to a claiming party with the fault chargeable *to the party or parties from whom the claiming party seeks to recover damages*."  Ark. Code Ann. § 16-64-122(a) (emphasis added).  As Robertson is not seeking damages from his employer, the plain meaning of this statute excludes his employer from the comparative fault inquiry. See Freislinger v. Emro Propane Co., 99 F.3d 1412, 1419 (7th Cir. 1996).

Moreover, even if Robertson's prior claim for workers' compensation benefits were considered a claim for damages for purposes of § 16-64-122(a), as the court concluded in construing a similar statute in Inland/Riggle Oil Co. v. Painter, 925 P.2d 1083, 1086 (Colo. 1996), we fail to see how including Robertson's employer in the comparative fault instruction serves any useful purpose under Arkansas law.  Neither Robertson nor defendants may recover from the employer in tort because workers' compensation benefits are an exclusive remedy.  See Elk Corp. of Ark. v. Builders Transp., Inc., 862 F.2d 663, 666 (8th Cir. 1988); Dulin v. Circle F Indus., Inc., 558 F.2d 456, 464 (8th Cir. 1977).  Adding a phantom defendant's fault to the equation

cannot *increase* Robertson's comparative fault percentage. Finally, because Arkansas, unlike many other States, did not abolish or limit joint and several liability when it enacted comparative fault, see Ark. Code Ann. §§ 16-61-201 *et seq.*, and because the workers' compensation statute does not limit a third party's liability to the employee on account of the employer's negligence, a jury finding of comparative fault by the employer would not reduce or otherwise affect defendants' liability to Robertson, unless of course the employer's negligence amounted to an intervening cause.

The judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

A true copy.


Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.