ARKANSAS POWER & LIGHT COMPANY *v.* KERR.

4-6732                                          161 S. W. 2d 403

Opinion delivered May 4, 1942.

*House, Moses & Holmes* and *Eugene R. Warren,* for appellant.

*A. A. Poff,* for appellee.

GRIFFIN SMITH, C. J.   June 21, 1941, Leonard L. Kerr delivered to "the ice compartment" of Arkansas Power & Light Company twelve cases of eggs. The appeal is from a judgment of $108 based upon allegations that the eggs, when stored, were of high quality, and in good condition; that the company's agreement was to keep them at proper temperature for a charge of ten cents per case per month; that such eggs were not kept at correct temperature "for the reason that when reclaimed they were spoiled."

The answer pleaded a written contract, by the express terms of which the company was relieved of liability.[1]

A demurrer to the answer, which was sustained, alleged invalidity of the contract on the ground that it contravened public policy. The defendant refused to plead further.

Appellant says in its brief: "Appellee thinks the contract form is a general exemption from liability not only for unknown causes, but from negligence itself. This we admit."[2]

---

[1] The contract, so-called, was:   "Arkansas Power & Light Company.   Receipt for Storage. . . .   The goods for storage as listed hereunder . . . are accepted with the express understanding that the company is not responsible for their condition while in storage or at their removal; nor for loss or damage by fire, water, storm, or other causes reasonably beyond its control. . . . Conditions accepted by L. L. Kerr."

[2] It is further argued:   "From a practical standpoint this court is fully aware that whenever any person suffers a damage to his property, he is always able to find some supposed ground of negli-

The "contract" is a printed sheet, 4 x 6½ inches, evidently issued in duplicate. Conditions are printed conspicuously, but in small type easily read. The answer states that plaintiff stored with the defendant *a case of eggs,* receipt of which was evidenced "by an instrument marked 'Exhibit A'." The receipt or contract so filed shows storage of twelve cases, instead of *a* case. The answer does not deny that ten cents per crate per month was to be paid, although nothing to this effect is to be found in the contract. The demurrer to the answer admits all well-pleaded defenses; and, since the contract or receipt was an exhibit to the answer, it is also admitted. It would be otherwise, however, if the receipt were a mere exhibit, rather than the contract on which the action is founded. But there must have been an oral contract regarding the price to be charged, or a writing not exhibited.

In an action at law exhibits are not parts of pleadings unless the right claimed is founded on the written instrument so exhibited. *Euper* v. *State,* 85 Ark. 223, 107 S. W. 179. In equity written instruments filed as exhibits to a complaint, and thereby made a part of the record, will control averments. *Cazort & McGehee Co.* v. *Dunbar,* 91 Ark. 400, 121 S. W. 270. An exhibit to a complaint at law may be referred to in order to complete and explain allegations of the complaint. *Lindsey* v. *Bloodworth,* 97 Ark. 541, 134 S. W. 959.

The demurrer admits expressed conditions under which the eggs were received, but alleges it was void, and the court so found. The answer alleges, and the demurrer admits, that Exhibit "A" constituted the contract between the parties. The contract undertakes to relieve appellant in three instances: (1) No liability attached if the eggs were not in good condition when stored. (2) Responsibility is disclaimed for condition of the eggs while in storage, and (3) when they were removed.[3]

gence on the part of another party. If every time eggs are removed from the ice chambers of the appellant in bad condition, we must stand a lawsuit, with expert testimony necessary on the ground of negligence and natural deterioration and our contract is no defense, then the return does not justify the expense."

[3] Other conditions of the contract are not involved in this appeal.

*First.*—Condition No. 1 is enforcible. The parties had a right to agree that if impaired foods should be stored, liability for condition when redelivered should not attach to appellant. Chemical analyses would have been required to determine whether deterioration would be progressive, or whether it would be halted, by reason of the semi-refrigeration afforded. Neither the contract nor the pleadings indicates that appellant's facilities were other than ordinary cold storage where moderately low temperatures were induced by ice, as distinguished from mechanical refrigeration.

*Second.*—Condition No. 2 is not enforcible if by it appellant sought to relieve itself from consequences of its negligence. A consciousness that failure to exercise due care will require compensation for injury to person or property is productive of caution and forethought by those in whose control rest the agencies that may cause damage; hence, public policy is involved when one employing another seeks protection through the instrumentality of contract, although within appropriate limitations not here an issue, conduct and the consequences of physical activities may be circumscribed.[4]

That it was appellant's purpose to contract against negligence is clear from its answer and brief.

*Third.*—Whether appellant would be liable for condition of commodities at the time of removal depends upon the care exercised during the storage period. It might also depend upon condition at the time of acceptance—a matter that may, as heretofore stated, be covered by contract.

The judgment is reversed, and the cause is remanded with directions that appellee be permitted to have trial if he elects to allege negligence.

---

[4] American Jurisprudence, v. 12, "Contracts," pages 683-84, § 193.