DESSERT SEED CO., INC. ET AL v. DREW FARMERS SUPPLY, INC.

5-5213                                      454 S. W. 2d 307

Opinion delivered June 1, 1970

*Rose, Meek, House, Barron, Nash & Williamson,* for appellants.

*Teague, Bramhall & Davis* and *Wright, Lindsey & Jennings,* for appellee.

LYLE BROWN, Justice. This litigation was initiated by six commercial tomato growers in Drew County and against Drew Farmers Supply, Inc. The growers ordered "Pink Shipper" tomato seed. The seed shipped was so designated, but when the crop began to mature it was discovered that the farmers had received seed of a variety substantially unmarketable in their area. (The variety could not be detected by visual inspection). Drew Farmers Supply filed a third party complaint against its supplier, Service Seed Company, a distributor headquartered in Mississippi. Service Seed interpleaded the seed grower in California, Dessert Seed Co., Inc. When the taking of evidence was completed all parties moved for directed verdicts. Thereupon the court held:

(1) That the tomato growers were entitled to recover against Drew Farmers Supply. (The amount of recovery was submitted to the jury which returned awards totalling $15,772);

(2) That Drew Farmers Supply was entitled to judgment over against Service Seed, the claimed limitation of liability being invalid; and

(3) That Service Seed was entitled to judgment over against Dessert Seed, finding that Dessert's disclaimer of liability as a defense was invalid both as to Service Seed's cause of action based on warranty and its action based on negligence asserted against Dessert.

Drew Farmers Supply did not appeal from the judgments against it by the growers. Service Seed, the distributor, appeals from the judgment over awarded against it in favor of Drew Farmers Supply; and Dessert Seed, the grower, challenges the judgment against it in favor of Service Seed. The two appeals of necessity must be treated separately.

I. *Service Seed—Drew Farmers Supply Transaction.* Drew Farmers Supply is a cooperative member of Southern Farmers Association, with headquarters in North Little Rock. Drew Farmers purchased most of its seed through Southern Farmers. It was stipulated that the two organizations were to be treated as one for the purposes of the lawsuit. In January 1967, Southern Farmers telephoned a rush order to Service Seed Company for tomato seed of the Pink Shipper variety. The seed was shipped forthwith and a six-pound bag was forwarded by Southern Farmers Association to Drew Farmers Supply. The tag attached by Service Seed recited that the bag contained Pink Shipper variety tomato seed. The face of the tag contained this fine print:

> Subject to the limitation of liability herein set forth, we warrant that seeds or bulbs sold are as described on the container, within recognized tolerances. Our liability on this warranty is limited in amount to the purchase price of the seeds or bulbs. In no way shall we be liable for the crop.

For some eight years Drew Farmers Supply and/or Southern Farmers had been fairly regular seed customers of Service Seed. In the course of those transactions the buyer received Service Seed's price lists and invoices.

Those instruments contained substantially the same wording as that which we have reproduced from the tag, as did its letterheads. Service Seed therefore argues that the totality of the recited evidence indicated an awareness by Drew Farmers Supply of the existence and meaning of Service Seed's disclaimer. Therefore, argues Service Seed, those facts place the case within the provisions of the Uniform Commercial Code, Ark. Stat. Ann. § 85-2-316 (4) (Repl. 1961), permitting limitations on remedies for breach of warranty. The cited section has to be applied in accordance with the provisions of §§ 85-2-718 and 85-2-719.

Service Seed's argument overlooks some essential facts. Drew Farmers Supply placed its order for these Pink Shippers by telephone. There was nothing said about a limited warranty. There was testimony that at least one of Drew Farmers' agents had before seen the limitation of warranty wording on tags on previous orders; but that fact is of little importance here. We are concerned with the particular order and acceptance of the particular seed. It was undisputed that these two companies negotiated oral "spot orders," as distinguished from written contractual orders containing limitation of liability clauses. There was testimony that not all tags carried printed limitations. Mr. Osborne, division manager for Southern Farmers, testified that Southern did business with suppliers from throughout the United States and that dependence was placed, "not on fine print," but upon the integrity of the supplier; and that the paramount concern of the buyer is such items as variety, purity, and germination. The fact finding tribunal—the trial court—evidently found that the limitation of warranty was not a basis of the bargain and there was substantial evidence to support that finding.

Additionally, the statute requires that a writing purporting to exclude or modify an implied warranty of merchantability "must mention merchantability" and "must be conspicuous." Ark. Stat. Ann. § 85-2-316(2) (Add. 1961). Service Seed's tag did not comply with

either requirement. Moreover, in capital letters on the tag, Service Seed certified the seed to be Pink Shippers. That representation was a warranty as a matter of law. *Walcott & Steele, Inc.* v. *Carpenter,* 246 Ark. 95, 436 S. W. 2d 820 (Feb. 10, 1969). Thus it is apparent that Drew Farmers had the protection of both the law of express and implied warranties, and it is certainly not unreasonable to conclude that Service Seed failed to show that those rights were unmistakably negated.

II. *Dessert Seed Co.—Service Seed Co. Transaction.* Dessert Seed is a seed grower in the west coast area. Early in 1966, Service Seed placed a substantial order for various seeds needed by it for the crop year 1967. Before the final consummation of that order there were a number of documents which passed from Dessert Seed to Service Seed, such as a letter, a price list, and a confirmation of the order in detail. All of those documents contained a finely printed limitation of liability clause. Likewise, items of correspondence which Service Seed sent to Dessert Seed contained the same type of printing whereby Service Seed purported to limit its liability. Finally, there was a contract order and agreement detailing the quantity, kind and variety of various seeds; describing the alternative terms of payment; protecting the seller in case of partial or total crop failure; relieving Dessert for liability from negligence; and limiting Dessert's liability in any event to a refund of the cost of the seed. The contract was prepared by Dessert and signed by officials of both companies.

With respect to the seed Pink Shipper, a mistake was made in Dessert's shipping department and the wrong seed was packed. Dessert explained it in a letter to Service Seed:

> You had your order placed with us for Tomato Pink Shipper and the stock girl who lists the numbers (stock numbers) for the items to be shipped saw the Pink Tomato Deal and due to the similarity of the name she used that stock number. When this

went out to the shipping department again they just picked up the lot number and made the same error in regard to the name.

Unfortunately for all parties concerned the seed was sent out under a shipping tag showing the tomato seed to be Pink Shippers. Also on that tag was a warranty clause in such fine print as to be barely legible:

We warrant to the extent of the purchase price that seeds we sell are as described by us on our container within recognized tolerances. Our liability, whether contractual or otherwise, is limited in amount to the purchase price of the seeds under all circumstances and regardless of the nature, cause or extent of the loss. Seeds not accepted under these terms and conditions must be returned at once in original unopened containers and the purchase price will be refunded.

Dessert Seed argues that there are a number of reasons why Service Seed was bound to be aware of the limitation of liability invoked by Dessert Seed. It was printed on various items of correspondence; it was in the contract order and agreement; it was called to Service Seed's attention in 1966 when a question arose about a previous shipment of cantaloupe seed; Service Seed used a similar limited warranty clause (without mentioning negligence); and it had become a common usage of trade within the industry.

Dessert Seed contends on appeal that it validly limited its liability to Service Seed to the amount of the purchase price of the seed. Dessert concedes that it warranted the seed to be Pink Shipper but argues that, according to the contract, the exclusive remedy would be for a recovery of the purchase price. Service Seed was relegated to the same remedy, Dessert argues, even if the wrong seeds were negligently shipped. We first examine the defense of immunity from negligence. There are three essential factors which, when combined, compel us to the conclusion that public policy

forbids that we sanction immunity from negligence in this type of transaction. They are (1) the legal requirements of certification, (2) the wording on the certification tag, and (3) the damaging results which the negligence is likely to cause to a community of growers.

(1) *The Legal Requirement of Certification and its Effect on Immunity from Negligence.* In certifying on the shipping tag the contents of the container, Dessert was performing a duty imposed by statute. T. 7, U. S. C. A. § 1571. In addition to the federal law, under which the shipment was made, many agricultural States, California and Mississippi included, have enacted the same requirement. Other States, such as ours, have delegated to appropriate State boards the authority to regulate labeling requirements. We are convinced that such labeling requirements are generally followed in the seed industry. We are not unmindful of the general rule that in many instances liability for negligence may be avoided by contract. 17 Am. Jur. 2d Contracts, § 188, at p. 556. On the other hand, the same authority enumerates many exceptions to the rule. For example it is there stated: "[T]he law will not sustain a covenant of immunity which . . . relieves one of a duty imposed by law for the public benefit." The same exception is found in 17 C. J. S. Contracts, § 262, p. 1164. Research reveals no Arkansas case in point; however, this court upheld the avoidance of a negligence immunity clause in *Arkansas Power & Light Co.* v. *Kerr*, 204 Ark. 238, 161 S. W. 2d 403 (1942). It was there held that appellant could not by contract relieve itself of negligence in not keeping the proper temperature for eggs stored by appellee. It was there pointed out that such clauses of immunity are not productive of "caution and forethought by those in whose control rest the agencies that may cause damage."

(2) *The Wording on the Certification Tag.* Dessert warranted that the seed conformed to the description on the container "within recognized tolerances." Then in large type appears this wording: "Kind and Variety, TOMATO—PINK SHIPPER." In our forum

we recognize that utmost reliance can be placed on the certification; in *Walcott & Steele, supra,* we held that the certification, as a matter of law, warranted the contents of the bag. It would certainly dilute the strong reliance to which the warranty has been properly elevated if the packer could be shielded from negligence in packing the wrong seed, particularly when the word "negligence" does not appear on the tag.

(3) *The Damaging Results which are Likely to Flow from Misbranding.* Neither Service Seed, Drew Farmers Supply, nor the six growers who purchased seed from this shipment could detect the variation in variety by visually examining the seed. The revelation could reasonably come about only when the plants had matured to the extent that the variation was visible from the formation of the plant. Then it is too late in the season to correct the harm. When an entire community of growers is thus placed at the mercy of the seed grower-packer the law should encourage "caution and forethought" on the part of the latter. To uphold the negligence clause in the contract would be more likely to produce the opposite result.

Service Seed in its pleadings placed in issue the negligence of Dessert Seed. In support of that contention Service introduced a letter written by Mr. Dessert (a portion of which we have copied) and which explained the mistake. In addition to admitting the error of the stock clerk, Mr. Dessert left the definite impression that the particular employee was not experienced. He said "experienced clerks are hard to come by these days when everyone wants to make a lot of money and do very little work." There was substantial evidence to support a finding of negligence.

To hold that Service Seed is limited to a recovery of the purchase price of the seed in the face of established negligence would be unreasonable, unconscionable, and against sound public policy. We declare the principle to be the law of our forum and it is applicable notwithstanding the contract was made in another

State. *White-Wilson-Drew Co.* v. *Egelhoff,* 96 Ark. 105, 131 S. W. 208 (1910).

Affirmed.