Joe **FRENSLEY** and Jack Martin, Appellants,

v.

**NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, Appellee.**

No. 87–1592.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1988.

Decided Sept. 19, 1988.

Robert R. Cloar, Fort Smith, Ark., for appellants.

Joel D. Johnson, Ft. Smith, Ark., for appellee.

Before HEANEY and JOHN R. GIBSON, Circuit Judges, and HARPER,* United States Senior District Judge.

HEANEY, Circuit Judge.

Joe Frensley and Jack Martin (collectively appellants) appeal from a judgment of the district court entered in accordance with a jury verdict in favor of National Fire Insurance Company of Hartford (Hartford). We affirm.

## I

Appellants are engaged in the business of breeding and showing Santa Gertrudis cattle. In connection with this business, they attended the 1982 Arkansas/Oklahoma State Fair in Fort Smith, Arkansas, and exhibited cattle. After the cattle show had closed for the evening, appellants, in accordance with the customary practice, bedded their cattle down for the night in an area outside of the show barn which Fair officials had set aside for that purpose. Later in the evening, a fire occurred in the bedding of appellants' cattle. As a result of the fire, five head of appellants' cattle died, and the parties dispute whether a sixth, a bull, was rendered sterile. Appellants' expert valued the loss at $212,500. Hartford's expert valued the loss at $137,500.

Subsequently, Ralph Peevy, an employee of the Arkansas/Oklahoma Regional Education and Promotion Association (Fair Association), gave two statements to police officers investigating the fire. In the first, he stated that on the night of the fire, after he got off work at 11:45 p.m., he saw two boys in the area of appellants' cattle. The boys struck a match, dropped it in the straw and ran away. Peevy stated that he did not stay and report the fire because he feared being caught and blamed for the fire. As it turned out, Peevy had lost a previous job for allegedly causing a fire on his employer's premises. In the second statement, Peevy stated that on his way home from work, he accidentally threw a lighted cigarette in the straw near appellants' cattle. He noticed the straw was burning but did not report the fire because he was afraid he would be caught and thrown in jail. Peevy subsequently appeared in Crawford County Court, entered a plea of nolo contendre to a charge of

* The HONORABLE ROY W. HARPER, United States Senior District Judge for the Eastern District of Missouri, sitting by designation.

second degree criminal mischief, and was sentenced to a term of probation.

Appellants filed suit against Hartford as the liability insurer of the Fair Association.[1] Hartford responded, claiming that exculpatory clauses and releases contained in a "Fair booklet" and in Fair entry forms precluded liability. The district court submitted the case to the jury on a number of interrogatories. Responding to the interrogatories, the jury first found that appellants agreed to and accepted the exculpatory clauses. The jury then assigned appellants seventy percent and the Fair Association thirty percent of the fault for the loss.[2] The court, in accordance with the jury verdict, entered judgment in favor of Hartford.

---

1. Arkansas law provides tort immunity to non-profit institutions, such as the Fair Association, but allows a direct action to be brought against the institution's liability carrier to the extent of the coverage. *See* Ark.Code Ann. § 23–79–210 (Michie 1987). In this case, Hartford had provided the Fair Association with coverage in the amount of $300,000.

2. Under Arkansas law, "[i]f the fault chargeable to a party claiming damages is equal to or greater in degree than any fault chargeable to the party or parties from whom the claiming party seeks to recover damages, then the claiming party is not entitled to recover such damages." Ark.Code Ann. § 16–64–122 (Michie 1987).

3. The fair booklet, which the record reflects appellants actually received, *see* Trial Transcript at 84 (testimony of Frensley), 158 (testimony of Pat Martin), contains the following clauses:

Rule 3. All owners of livestock, or others having same in charge, shall care for, guard, protect and preserve the same, as the Arkansas–Oklahoma State Fair does not undertake to do so, and it shall not be held responsible for any loss or damage to said property or the owners thereof.

\* \* \* \* \* \*

Rule 45. In no case shall the Arkansas–Oklahoma State Fair or any of its officers or directors, be held responsible for any loss, damage, injury or death by disease, theft, or from any other cause of any character, to any property while same is on the Exposition Grounds, or any other time or place. The Management hereby assumes no responsibility, either as bailee or otherwise, for any property brought upon said grounds; all such property being brought and kept upon said grounds shall be at owner's risk.

## II

Appellants claim that the district court erred in its treatment of the exculpatory clauses found in the Fair booklet and in Fair entry forms.[3] In addition, appellants claim that the court erred in refusing to admit Peevy's statements to the police and his subsequent plea of nolo contendere.[4]

### A. The Exculpatory Clauses

The record reveals that appellants or their agents actually received and read at least some portions of the Fair booklet, *see* Trial Transcript at 138–40 (testimony of Joe Frensley), 158–59 (testimony of Pat Martin), and printed their names on a line di-

---

Rule 46. If the property owners, or others interested in the property desire protection against loss, damage, or injury from fire, or from any other cause, they must make their own arrangements and pay for such insurance.

\* \* \* \* \* \*

Rule 48. No claim for injury to any person or property shall ever be asserted nor suit instituted or maintained against the Arkansas–Oklahoma State Fair, its officers or its agent, by or on behalf of any person, firm or corporation or their agents, representatives, servants or employees having license or privilege to exhibit on said Exposition grounds, or occupying space thereon, the Arkansas–Oklahoma State Fair shall in no manner be responsible therefor, and in case it be subject to any expense of liability all persons causing same or liable therefor shall indemnify the said Arkansas–Oklahoma State Fair.

The entry forms contain the following clause: Please accept the entries indicated below, subject to the rules and classifications governing the exhibit as published in your [Fair booklet] of the current year, by which [I] agree to be governed in exhibiting the same, and declare that all statements made in connection with said entries are true. I hereby release the Arkansas–Oklahoma State Fair from any liability from loss, damage or injury to livestock or other property, while said property is on the Fairgrounds.

*See* Plaintiffs' Trial Exhibits 6, 18.

4. The appellants also claim that the district court erred in failing to adequately instruct the jury that any negligent, reckless, or intentional conduct of an employee is chargeable to the employer, and that the Fair Association had a duty of ordinary care to maintain its premises in a reasonably safe condition for the appellants. We have considered these claims and find them to be without merit.

rectly below an exculpatory clause in the entry forms. *See id.;* Plaintiffs' Trial Exhibit 6 (Frensley entry form); Plaintiffs' Trial Exhibit 18 (Martin entry form). Despite these facts, the appellants contend that the trial court erred in admitting evidence concerning the clauses and in denying their motion for a directed verdict on the issue of the validity of the clauses. We disagree.

Under Arkansas law, a contractual clause purporting to release a party from the consequences of its own negligence is strictly construed. *See Middleton v. Cato,* 251 Ark. 745, 474 S.W.2d 895, 897 (Ark. 1972). Moreover, in order to be effective, the clause must set forth the negligent liability that the contracting parties seek to avoid. *Id.,* 474 S.W.2d at 898. Finally, Arkansas courts have refused to enforce exculpatory clauses if they are in contravention of public policy or are unconscionable. *See, e.g., id.,* 474 S.W.2d at 898 (exculpatory clause in bailment contract not enforced, in part for reasons of public policy); *Arkansas Power and Light Co. v. Kerr,* 204 Ark. 238, 161 S.W.2d 403, 404 (1942) (exculpatory clause in bailment contract not enforced for reasons of public policy); *Kohlenberger, Inc. v. Tyson's Foods, Inc.,* 256 Ark. 584, 510 S.W.2d 555, 564–66 (1974) (recognizing that under the Arkansas UCC, limitation of recovery for contracting party's negligence is unenforceable if unconscionable); *Dessert Seed Co. v. Drew Farmers Supply, Inc.,* 248 Ark. 858, 454 S.W.2d 307, 310–11 (1970) (refusing to enforce warranty limitation on public policy and unconscionability grounds where buyer purchased negligently mislabeled seeds).

■ Applying the above standards, the Fair booklet and entry forms clearly stated that the Fair Association would not be responsible for loss or damage to property while it was on the Fair grounds. The Fair booklet also specifically informed entrants that if they desired to protect their property from fire loss, they should obtain insurance against that risk. *See* Fair booklet Rule 46. Thus, a jury could conclude that, taken as a whole, the clauses exempted the Fair Association from liability for negligently caused fire damage to property.

■ Concerning public policy, the fair booklet requires entrants to "care for, guard, protect and preserve" their property. Moreover, the record reflects that, according to standard practice at the fair, the appellants actually cared for their animals while at the fair, and in fact, brought personnel with them for that purpose. *See, e.g.,* Trial Transcript at 190–191 (testimony of Billy Martin). Thus, this case does not present a situation in which public policy plays a heightened role because the party attempting to exempt itself from liability has agreed to assume complete control over and responsibility for certain property. *Cf. Middleton,* 474 S.W.2d at 897 (bailment case); *Dessert Seed Co.,* 454 S.W. 2d at 310–11 (case in which original supplier was only party able to detect and prevent mislabeling of seed); *Arkansas Power and Light Co.,* 161 S.W.2d at 404 (bailment case).

■ Concerning unconscionability, although the exculpatory clauses are set forth in pre-printed forms and the parties did not explicitly bargain over them, the record reveals that in 1982 appellants were experienced in the cattle business, that Frensley was the regional representative for Arkansas and Oklahoma on the board of directors of the Santa Gertrudis International Breeders Association, and that in past years Frensley had exhibited cattle in approximately twelve to fourteen shows a year. *See* Trial Transcript at 70–71, 81–82. Thus, a jury could conclude that the clauses were a result of agreement between experienced businesspersons of relatively equivalent bargaining power.

In sum, this diversity case involves application and interpretation of Arkansas law. On review, this court, although not bound by the district court's interpretation of state law, gives great weight to the decisions of the district judges who are experienced with the law of the state in which they sit. *See, e.g., Freeze v. American Home Products Corp.,* 839 F.2d 415, 417 (8th Cir.1988) In light of such deference, we cannot say that the district court erred

in admitting evidence concerning the exculpatory clauses and in refusing the appellants' motion for a directed verdict on the issue of their validity.

Alternatively, appellants contend that even if the district court did not err in refusing to direct a verdict in their favor on the exculpatory clauses, it erroneously submitted the following interrogatory to the jury.

> You have heard evidence concerning certain clauses in the Arkansas/Oklahoma entry form and in the Arkansas/Oklahoma general fair rules which purport to exempt the defendant from liability for loss caused by fire. Do you find from a preponderance of the evidence that the plaintiffs, Joe Frensley and/or Jack Martin, knew or that a reasonably prudent person in the plaintiff's circumstances should have known that these clauses had exempted the defendant from liability for loss caused by fire and that the parties agreed to and accepted this provision?

Interrogatory Number 1.

The jury answered the interrogatory in the affirmative for both Frensley and Martin. In addition, the jury returned the interrogatory form, having placed a double underlining beneath the phrase "should have known."

Appellants contend that inclusion of an "objective standard" in the interrogatory was prejudicial in a number of respects.

First, they contend that it needlessly confused the jury because it was inconsistent with instructions given the jury concerning the clauses. Second, they claim the contested phrase allowed the jury to compare the appellants' negligence in failing to recognize the significance of the exculpatory clauses with the negligence of the Fair Association which served as the basis for the complaint. Thus, they claim the phrase infected not only the jury's answer to the interrogatory in which it was included but also its answer to the interrogatories in which negligence was apportioned.

■ This Court has recognized that the trial court has broad discretion in framing interrogatories for a special verdict. *Commerford v. Olson,* 794 F.2d 1319, 1323 (8th Cir.1986). Notwithstanding this discretion, the interrogatories should fully and fairly present each issue and should sufficiently instruct and explain each matter submitted to allow the jury to make findings on each issue. *Id.* Applying this standard, we reject appellants' challenge to the interrogatory.

■ Initially, we find that appellants' objection in the trial court was insufficient to alert the court to the issue they now seek to raise on appeal. At the pre-submission conference, the appellants objected to the relevant interrogatory, stating:

> Referring to the language following [k]new that a reasonably prudent person in plaintiffs' circumstances should have known that these clauses had exempted the defendant from liability for loss caused by fire, *the specific portion is had exempted the defendant, the basis for the exception for the objection is that it appears to put on the plaintiffs the [onus] of determining a legal conclusion.*

Trial Transcript at 207 (emphasis added).

Of course, a trial judge need not undertake alone the task of creating the interrogatories to be submitted to the jury. Rather, the judge is entitled to meaningful assistance from both parties. For this reason, if a party fails to raise a specific objection in the trial court to the form or contents of an interrogatory, it cannot raise that objection for the first time on appeal. *See, e.g., J.C. Motor Lines, Inc. v. Trailways Bus System,* 689 F.2d 599, 603 (5th Cir.1982).

Here, the appellants objected only to the instruction on the ground that it appeared to place on them "the onus of determining a legal conclusion." They did not challenge the language in the instruction allowing the jury to employ an objective standard to determine whether the appellant knew of the allegedly improper legal conclusion, nor did they challenge the instruc-

tion as whole on that basis.[5] Accordingly, the appellants cannot raise such an objection for the first time on appeal.

Moreover, even if the appellants could properly contest the instruction on appeal, we would reject their contentions. First, the challenged interrogatory may be interpreted consistent with jury instruction 16B, which employs a subjective standard.[6] The findings required by the objective language in the interrogatory were clearly in addition to the subjective agreement and acceptance required by both the interrogatory and instruction 16B.[7] In other words, because the interrogatory required at least subjective agreement and acceptance, the additional requirement imposed by the objective language could not have been prejudicial to appellants.

Second, we do not agree that the objective language somehow infected the entire verdict. The contested language informed the jury only that it should use an objective standard to determine appellant's knowledge of the potential effect of the exculpatory clauses. We simply fail to see how such language would infect the jury's assessment of the parties' negligence. Taken as a whole, the interrogatories clearly separated issues concerning the exculpatory clauses from those concerning negligence. To hold that one interrogatory somehow "infected" another would require us to ignore the clear import of each. In sum, although in hindsight the court may have been able to draft the challenged interrogatory in a more artful manner, we find that it was sufficient to fully and fairly present questions concerning the exculpatory clauses to the jury.[8]

### B. Peevy's Statements and Nolo Contendere Plea

Appellants contend that the district court erred in refusing to admit statements of Fair Association employee Ralph Peevy,

**5.** In fact, given that an affirmative answer to the instruction required the jury to find that appellants knew of the potential effect of the clause (using an objective standard) and that the appellants agreed to and accepted the clauses (using a subjective standard), it is possible that tactical considerations led appellants to decide not to *object to the "objective standard"* language in the interrogatory.

**6.** Jury instruction 16B states:
You are instructed that defendant National Fire Insurance Company of Hartford has *claimed the defense of release or disclaimer.* In order to find for the defendant under this defense, you must find by a preponderance of the evidence that *the release or disclaimer* provisions between plaintiffs and representatives of the Arkansas/Oklahoma Regional Education and Promotion Association, Inc., were agreed to and accepted by the parties.
Appellants also objected to instruction 16B on the ground that the phrase "agreed to and accepted by the parties" did not sufficiently inform the jury that the clauses must have been a part of the bargain in order to be effective. Appellants submitted an alternative instruction requiring the jury to find the clauses were "bargained for" and "understandingly entered into" in order to find them effective.
The trial court rejected the appellants' proposed instruction, stating:
I don't like the word bargained for * * * I think that connotes to the average individual out on the street that we sat there and talked about it and bargained for, will you take this, no, I won't take that. I'll take something else.

So I think bargained for has a connotation that we didn't intend to convey so it's: agreed to and accepted by the parties.
Trial Transcript at 205.
Reviewing jury instructions, this Court must determine whether, as a whole, they state the governing law fairly and correctly. Moreover, *the district court has broad discretion in formulating the language of the instructions and will not be overturned on appeal so long as the instructions given are accurate and fair to both parties. See Federal Enterprises Inc. v. Greyhound Leasing & Financial Corp.,* 849 F.2d 1059, 1061 (8th Cir.1988). Applying this standard, we are convinced that the district court did not abuse its discretion in using the language that it did. The instructions as a whole fairly and accurately state the governing law.

**7.** Indeed, the trial court recognized the relation between the instruction and the interrogatory. After determining that the phrase "agreed to and accepted" would be used in instruction 16B, the court stated, "We're going to, on the interrogatory in relation to that, we're going to have that read: And that the parties agreed to and accepted such provisions." Trial Transcript at 205.

**8.** We also note that since the interrogatories did not "infect" one another, the jury's finding that appellants' negligence was greater than that of the Fair Association remains an insurmountable obstacle to recovery and supports the view that any error in the contested interrogatory was harmless.

one of which contained Peevy's admission that he accidentally started the fire. Appellants claim that the statements were admissible pursuant to Federal Rule of Evidence 801(d)(2)(D). The rule provides that a "statement by a party's agent concerning a matter within the scope of the agency or employment, made during the existence of the relationship" is not hearsay. Fed.R. Evid. 801(d)(2)(D). We need not, however, decide the issue.

The record is clear that both statements were, in fact, admitted into evidence during the course of the trial. At the time appellants first offered the statements, the trial judge refused to admit them because they were hearsay and did not fit within the agency exception of Rule 801(d)(2)(D). Subsequently, however, appellants called Peevy to the stand and questioned him concerning the fire. At this point, both of Peevy's prior statements were admitted into evidence for impeachment purposes. *See* Trial Transcript at 20, 22. Since both statements were received in evidence, and since Peevy testified and was available for cross-examination on the statements, we hold that any error in refusing to admit the statements at the time they were originally offered was harmless.

The appellants also contend that the district court erred in refusing to admit Peevy's nolo contendre plea. Although appellants recognize that, pursuant to Federal Rule of Evidence 410(2), a plea of nolo contendre is inadmissible in a civil proceeding "against the defendant who made the plea or was a participant in the plea discussions," they argue that the plea was admissible because it was not offered against Peevy. Hartford responds that, although Peevy was not a party to the proceeding, appellants intended to use the plea to imply wrongdoing by him. Therefore, they argue that the plea was offered "against" Peevy as that term is used in Rule 410.

We need not, however, decide the issue. In light of the minimal probative value of a nolo contendre plea, the admission of Peevy's prior statements concerning the fire, and the fact that Peevy actually testified concerning the fire, we hold that any

error in refusing evidence of the nolo contendre plea was harmless.

Accordingly, we affirm.