**Matthew P. OWEN, Appellant,**

v.

**Donald PATTON, Appellee.**

**No. 90–1904.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1990.

Decided Feb. 13, 1991.

Clinton B. Roberts, Farmington, Mo., for appellant.

Mary Schroeder, St. Louis, Mo., for appellee.

Before BEAM, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOODS,[*] District Judge.

BRIGHT, Senior Circuit Judge.

Matthew P. Owen brought this personal injury action based on diversity of citizenship against Donald Patton, the owner of Papa Don's tavern, a young adults' hangout on a highway near Farmington, Missouri. Owen claimed that an employee of the tavern, one Brian McGee, inflicted severe blows to Owen's head at approximately midnight on January 2, 1987. In his complaint, Owen alleged that the battery occurred in the scope of McGee's employment as a bouncer at Papa Don's. Patton's answer denied that McGee worked for Papa Don's or assaulted Owen.

After a three-day trial before Magistrate Judge William S. Bahn, the jury returned a verdict for Patton. The magistrate judge entered judgment and denied Owen's post-trial motion for a new trial. Owen appeals, alleging error in excluding from evidence certain statements proffered as party admissions by Patton's agents or employees.

Owen also objects to the introduction of evidence about his alcohol consumption on the night in question and the unrelated incarceration of certain of Owen's acquaintances. On review of the record, we affirm.

## I. BACKGROUND

The record shows three scenarios for the events during which Owen sustained his injuries. The first scenario, the plaintiff's case, involved eyewitness testimony from Ray Hahn, a friend of Owen's, and Rick Hedrick, an alleged assistant manager for the tavern. Under this scenario, Owen, while home on leave from the military, had attended a going away party in his honor at his aunt's residence with several friends. Around 11:00 p.m., the group decided to leave for Papa Don's, taking several vehicles.

When Owen's vehicle arrived at Papa Don's, a fight was in progress in the parking lot. While approaching the tavern, Owen discovered that Roger Hahn, Ray Hahn's brother, had arrived earlier and become embroiled in the altercation. Owen helped extricate Roger Hahn and escorted him to one of the group's cars. Owen then returned to the scene to watch the mob, which by this time was spilling out of the tavern. Shortly thereafter, McGee approached Owen from behind and, without provocation, struck Owen in the head. The blow fractured Owen's skull and knocked him unconscious. Owen did not see who hit him.

The second scenario, proffered by the defense, relied heavily on McGee's testimony. According to McGee, he neither worked for Papa Don's nor struck Owen. The defense also denied that plaintiff's witness Hedrick had been Patton's agent or employee.

The third scenario arose during Owen's rebuttal case. On rebuttal, an investigator for Owen related a conversation that he had with McGee prior to trial. According to the investigator, McGee admit-

* The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation.

ted both his employment with the tavern and striking Owen. Under this version of the incident, Owen entered the tavern earlier in the evening and engaged in underage drinking. When McGee threw him out, Owen hung around the entrance until closing, repeatedly taunting McGee. When circumstances required McGee to attend to a fight outside the tavern, Owen refused to leave the parking lot area and ultimately swung at McGee with his fist. McGee retaliated, knocking Owen to the ground.[1]

## II. DISCUSSION

### A. Admissions of Agents

Owen objects to the magistrate judge's evidentiary rulings, excluding on hearsay grounds, out-of-court statements by several of Patton's alleged agents or employees. Although Owen cites numerous instances of alleged error, only two require detailed discussion.

In the first instance, the magistrate judge refused to permit testimony as to out-of-court statements made by Rick Hedrick, Papa Don's alleged assistant manager. According to witnesses, Hedrick, while holding himself out as a manager, stated that McGee worked for Papa Don's. These statements would have buttressed Owen's position on this point. The magistrate judge, however, refused to find an agency relationship, notwithstanding testimony indicating that Hedrick "was obviously a foreperson or a number one man" for Papa Don's. Tr. at 129.

■ In reviewing the record, we conclude that the magistrate judge may well have erred in excluding Hedrick's statements. Inasmuch as sufficient foundation had been laid to indicate Hedrick's apparent managerial authority, the statements should have been admitted pursuant to Fed.R.Evid. 801(d)(2)(D). Under that sec-

tion, Hedrick's statements could serve as evidence against the principle, Patton, as admissions by his employee made in the course and scope of employment. *FDIC v. First Interstate Bank of Des Moines*, 885 F.2d 423, 435 (8th Cir.1989); *Wright v. Farmers' Co-Op of Ark. & Okla.*, 681 F.2d 549, 552–53 (8th Cir.1982).

Nevertheless, the magistrate judge's refusal to permit testimony as to Hedrick's out-of-court statements must be deemed nonprejudicial, and not reversible, error. Owen later called Hedrick as a witness. At that time, Hedrick related that McGee worked for Papa Don's as a general employee and bouncer. Hedrick also stated that he saw McGee strike Owen and knock him to the ground. Thus, Owen incurred no material prejudice from the magistrate judge's earlier error in excluding Hedrick's statements. *See Frensley v. National Fire Ins. Co. of Hartford*, 856 F.2d 1199, 1204–05 (8th Cir.1988).

■ In the second instance, the magistrate judge excluded testimony that various persons, upon asking at the tavern for the person in charge, had been directed to Hedrick. Here, we conclude that Owen laid insufficient foundation for the admission of such statements. *See Gulbranson v. Duluth, M. & I. R. Ry.*, 921 F.2d 139, 142 (8th Cir.1990). Owen proffered no evidence that these witnesses had directed their inquiry to either tavern employees or others likely to possess the requisite knowledge about who was in charge. We therefore perceive no error in the exclusion of these statements.

As to the remaining out-of-court statements by Patton's alleged agents, in some cases Owen appeared to accede to the magistrate judge's rulings and made no offer of proof as to the testimony that would have been forthcoming absent the objec-

---

1. This rebuttal testimony from Owen's investigator related a version inconsistent with McGee's statement. Thus, the court most likely admitted this testimony as evidence of a prior inconsistent statement under Fed.R.Evid. 613. Ordinarily, such evidence remains hearsay, admissible only for impeachment. *United States v. Livingston*, 816 F.2d 184, 191–92 (5th Cir.1987); *see also Strudl v. American Family Mut. Ins.*, 536 F.2d 242, 245 (8th Cir.1976). Given the previous proof about McGee's employment at the tavern, however, the statement may also have constituted substantive evidence against Patton as a party admission. *See* Fed.R.Evid. 801(d)(2). Nevertheless, neither party requested an instruction limiting the effect of this evidence, and the court gave none.

tion. Thus, Owen failed to preserve these points for appellate review. Fed.R.Evid. 103(a)(2). In still other cases, the record discloses that Owen sustained no lasting prejudice from the magistrate judge's ruling. While the magistrate judge may have temporarily frustrated Owen's attempt to introduce certain statements, these statements ultimately received admission into evidence later in Owen's examination.

### B. Alcohol Consumption

We also reject Owen's claim that the magistrate judge erred by permitting inquiry into Owen's alcohol consumption on the evening in question. While cross-examining Ray Hahn, defendant's counsel asked:

Q And what had Matt [Owen] been drinking? Whiskey?

A Beer.

Tr. at 45. The answer drew only a non-specific "I'm going to object to that, judge" from Owen's attorney. *Id.*

■ This belated and general objection is insufficient to preserve the error. Fed.R. Evid. 103(a)(1); *see also* M. Bright & R. Carlson, *Objections at Trial* app. at 181 (1990). Moreover, the testimony cannot be deemed unduly prejudicial when Owen himself, at a later stage of the trial, volunteered that he had consumed several rum drinks that evening.

### C. Unrelated Incarceration

■ Lastly, we turn to Owen's claim that undue prejudice resulted when defendant's counsel elicited testimony that certain of Owen's companions on the evening in question, Ronnie Mullineaux and Roger Hahn, now reside in prison. We agree that this testimony of "guilt by association" did not belong in the lawsuit and could have evoked some improper prejudice against Owen. Even so, the magistrate judge committed no error.

In cross-examining Owen, defendant's counsel asked:

Q Where is Ronnie Mullineaux at this time?

A I think he is in jail, sir.

Q In the penitentiary?

A Yes.

Q He's doing time for what?

A I'm not really sure, sir.

Q Well, do you know that he's doing time for burglary, ten years?

A No. I wasn't—

Tr. at 358–59. At this point, Owen's counsel asked to approach the bench, but registered no formal objection. The magistrate judge nevertheless instructed defendant's counsel to end this line of inquiry. At that time, counsel for defendant agreed to do so. Yet, only two witnesses later, defendant's counsel again engaged in a similar colloquy on cross-examination:

Q Do you know where [Roger] Hahn is right now?

A Prison, I think.

Q Prison?

A I think so.

Q Do you know where [Ronnie] Mullineaux is?

Tr. at 426.

Although Owen's counsel failed to object, the magistrate judge interrupted: "We've been through that. That's enough of that. Come on." *Id.* This admonishment notwithstanding, defendant's counsel continued the same line of questioning, asking whether the witness had talked to the two incarcerated men. However, Owen's counsel still did not object.

Yes, we agree that the inquiry amounted to improper cross-examination upon an irrelevant matter. *See* Fed.R.Evid. 402. Even if relevant, the probative worth of the plaintiff's association with persons who subsequently ended up in prison did not justify its inclusion in the trial. *See* Fed.R. Evid. 403. However, without an objection, a motion to strike, a request for special instructions or a motion for mistrial, the court was not called upon to make a ruling that could result in error for failure to accommodate the plaintiff's request. Thus, we are not justified in granting a new trial even though we believe that defense counsel's tactics here bordered on misconduct.

Trial counsel must recognize that objections must be made to improper questions or any improper evidence put before the

jury. Without an objection and a proper request for relief, the matter is waived and will receive no consideration on appeal absent plain error. Judge Arnold's comments in *United States v. Thornberg*, 844 F.2d 573, 575 (8th Cir.), *cert. denied*, 487 U.S. 1240, 108 S.Ct. 2913, 101 L.Ed.2d 944 (1988), are apropos:

> In general, preserving an issue is a matter of making a timely objection to the trial court and clearly stating the grounds for the objection, so that the trial court has an opportunity to prevent or correct the error in the first instance. Unless the issue was brought to the attention of the trial court in this manner, we are loath to reverse, even if there is error, for at least two reasons. First, as a practical matter, without a timely objection a reviewing court cannot know whether the appellant knew of the error at the time it was made, but decided nevertheless to accept the ruling in the hope that it would not harm his case. Thus the reviewing court cannot be sure that the appellant did not consent to the error. Second, in most cases it is simply unfair to reverse a trial court on the basis of an issue that it has not had an opportunity to consider. In our adversarial system, so long as the proceeding is conducted within the bounds of fundamental fairness, it is not the duty of the trial court to anticipate and evaluate every possible error that might be alleged. Rather, it is the role of counsel to bring such matters to the court's attention.

Further, we cannot say that the admission of this evidence constituted plain error. Having reviewed the record, we fail to perceive any resultant injustice of sufficient magnitude to require reversal.

 We nonetheless feel constrained to add the following comment. Under Fed.R. App.P. 39(a), we may deny costs to a prevailing appellee. *Baez v. United States Dep't of Justice*, 684 F.2d 999, 1006–07 (D.C.Cir.1982) (en banc); *Guse v. J.C. Penney Co.*, 570 F.2d 679, 681 (7th Cir.1978). The testimony of the police officers, plus Hedrick and the plaintiff's investigator, suggest that McGee, a key witness for Patton, may well have perjured himself when he denied working at Papa Don's. This circumstance, plus the aforementioned conduct of Patton's counsel in repeatedly injecting the incarceration issue into these proceedings, prompts us to exercise our discretionary authority. In our view, it would be improper to permit Patton, the successful party at trial and on this appeal, to tax costs. Accordingly, we award appellee Patton no costs for this appeal.

## III. CONCLUSION

In conclusion, as the magistrate judge committed no reversible error, we affirm. In view of the questionable conduct on the part of the appellee's witness and attorney, however, the appellee shall pay his own costs for this appeal.