978 F.2d 1260
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eddie TAYLOR, Defendant-Appellant.
 No. 91-3689.
 United States Court of Appeals, Sixth Circuit.
 Oct. 23, 1992.
 
 Before DAVID A. NELSON and SILER, Circuit Judges, and MILES, Senior District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from a conviction on federal drug charges. The defendant alleges that his constitutional and statutory rights to a speedy trial were violated and that certain evidence admitted at his trial should have been excluded as hearsay. Finding no reversible error, we shall affirm the conviction.
 
 
 2
 * The defendant, Eddie Taylor, was arrested by local police officers in Mansfield, Ohio, on April 25, 1990. He was charged with firearms and narcotics violations in the Richland County Common Pleas Court. These charges were dismissed, on motion of the prosecutor, in July of 1990.
 
 
 3
 On July 25, 1990, defendant Taylor was arrested by Federal authorities and was charged by way of complaint with the same conduct for which he had been charged in the state court. On August 21, 1990, a federal grand jury returned a five-count indictment against defendant Taylor for violations of 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2, and 18 U.S.C. § 924(c)(1). The district court attempted to arraign him on September 13, 1990, but because his attorney did not appear at that time and because the defendant stated that he did not wish to be arraigned without counsel, he was not arraigned until September 18. On September 27 the defendant filed a number of pretrial motions that were decided by the district court four weeks later, on October 23, 1990.
 
 
 4
 On the day after the rulings on the motions, defendant Taylor moved for a dismissal on the ground that he had been denied a speedy trial. This motion was denied on October 29, 1990, and the trial was commenced that same day.
 
 
 5
 At trial, the prosecutor put a woman named Paris Bonds on the stand. Ms. Bonds was a police informant who had purchased drugs from defendant Taylor. She testified that she had arranged to buy drugs from him at a McDonald's restaurant and that his son, Steve, showed up instead and "nodded his head for me to come over to his car." When Ms. Bonds inquired about Eddie Taylor's whereabouts, as she told the court, Steve Taylor said "he is going to send me." Taylor's counsel objected to this testimony, and the objection was overruled.
 
 
 6
 On direct examination of Captain Philip Messer, a local police officer, defendant Taylor's counsel asked about a certain Leon Briggs, whom Messer had seen leaving defendant Taylor's house at the time of the arrest. (Captain Messer testified previously that he had discovered drug paraphernalia at defendant Taylor's residence, along with a powdery substance that later proved to be cocaine.) The following colloquy ensued between defendant Taylor's attorney and Captain Messer:
 
 
 7
 "Q. Through your surveillance, you had Leon [Briggs] under surveillance also as a drug dealer, a known drug dealer, isn't that correct?
 
 
 8
 A. We didn't have him under surveillance. We knew who Leon was working for and selling for. I don't know if that's--
 
 
 9
 Q. You knew he was involved in the drug world?
 
 
 10
 A. I knew--I knew he was selling to a particular person.
 
 
 11
 Q. That's not my question. My question, Detective, is that did you know that Leon, as you identified in your report, that was leaving or exiting, was he a suspect of yours in the drug world? Did you know that he was a drug dealer? Ever have knowledge that he was a drug dealer?
 
 
 12
 A. Yes."
 
 
 13
 On cross-examination of Captain Messer, the prosecutor asked who Leon Briggs was working for. Captain Messer responded that he was working for Eddie Taylor. An objection to this testimony was overruled.
 
 
 14
 Defendant Taylor was ultimately found guilty on three counts of the indictment and was sentenced to 72 months in prison. This appeal followed.
 
 II
 
 15
 The Speedy Trial Act, 18 U.S.C. § 3161 et seq., provides among other things that in any criminal case in which a plea of not guilty is entered, the defendant's trial shall commence within 70 days from the date of the indictment or information or the date on which the defendant appeared before a judicial officer of the court in which the charge is pending, whichever is last. 18 U.S.C. § 3161(c)(1).
 
 
 16
 In the instant case the defendant was indicted on August 21, 1990, 69 days before commencement of the trial, and he was arraigned on September 18, 1990, 41 days before the trial. Both the indictment and the arraignment were thus within 70 days of the start of the trial. Moreover, 18 U.S.C. § 3161(h)(1)(F) provides, generally speaking, that a delay resulting from any pretrial motion shall be excluded in computing the time that has elapsed. Exclusion of the period between September 27 and October 23, when defendant Taylor's pretrial motions were under consideration, brings this case even more comfortably within the 70-day limit.
 
 
 17
 Defendant Taylor argues that 70 days began to run on the date on which he was arrested by the local authorities. The argument is not well taken; a state arrest does not trigger the federal Speedy Trial Act. See United States v. Copley, 774 F.2d 728 (6th Cir.1985), cert. denied, 475 U.S. 1049 (1986). It is immaterial that, as defendant Taylor contends, an agent of the federal Bureau of Alcohol, Tobacco, and Firearms knew about the arrest by the local police as early as May 18, 1990. Such knowledge would not convert the state arrest into a federal one, and the date of the arrest would not have marked the beginning of the 70-day period under 18 U.S.C. § 3161(c)(1) in any event.
 
 
 18
 Defendant Taylor also argues that the facts demonstrate a violation of his Sixth Amendment right to a speedy trial, separate and apart from any violation of the Speedy Trial Act. In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court announced a four-factor "balancing test" to be used in determining whether the constitutional right to a speedy trial has been violated. In evaluating denial of speedy trial claims, Barker says, a court should consider (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted the right, and (4) prejudice to the defendant. Id. at 530.
 
 
 19
 In the instant case, defendant Taylor did assert at the trial level that his right to a speedy trial had been violated. His trial commenced 69 days after his indictment, which was certainly not an inordinate delay. The reasons for the delay--including the 27 days that the trial court spent considering Taylor's pretrial motions--were not exceptionable. Finally, defendant Taylor has not demonstrated that he was prejudiced by any delay. There was no constitutional violation, in our view.
 
 III
 
 20
 Defendant Taylor's arguments concerning the trial court's evidentiary rulings are also unpersuasive. If a sufficient foundation had been laid, witness Bonds' report of Steve Taylor's statement would not have been hearsay; it would have constituted an admission of a party opponent under Federal Rule of Evidence 801(d)(2), because Steve Taylor would have been shown to be his father's agent. Cf. Owen v. Patton, 925 F.2d 1111, 1113 (8th Cir.1991) (finding a sufficient foundation). There may not have been sufficient testimony or other evidence to indicate that Steve Taylor was acting as his father's agent in this instance, but if the court's decision to allow Ms. Bonds' testimony was erroneous, the error was clearly harmless in view of the overwhelming evidence of defendant Taylor's guilt.
 
 
 21
 Finally, the admission of Captain Messer's statement concerning Leon Briggs' relationship to defendant Taylor does not justify reversal. The district court concluded that when defendant Taylor's counsel interrogated Messer at some length about his knowledge of Briggs' drug activities, he opened the door for the prosecutor's question as to the identity of the person Briggs was working for. As the court stated in a side-bar conference,
 
 
 22
 "We have all kinds of information here in his [Messer's] capacity as a supervisor of his group that's doing all of this investigating. A very great deal of what you asked this witness had nothing to do with what he personally knew, but because he supervised it. There was a whole series of questions about what [another individual] reported to him that he clearly didn't know. If that's going to be allowed, then I don't think something--I think you opened the door to the extent that that's not an improper question."
 
 
 23
 It was defendant Taylor's own counsel who asked Captain Messer about his knowledge of Briggs' drug-related activities, and it was in response to the questions of defendant Taylor's own counsel that Captain Messer indicated that he knew who Briggs worked for. Defendant Taylor's counsel clearly opened the door for the prosecutor to inquire about the identity of Briggs' "employer." Even if the court's ruling was erroneous, moreover, we think it was harmless.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation